# Wytheville.

J. C. ALEXANDER AND WIFE v. J. B. ALEXANDER AND ALS.

August 23d, 1888.

1. APPEAL *of one, not the appeal of the other.*—Where the parties in a cause stand upon distinct and unconnected ground, and their rights are separate and not equally affected by the same decree or judgment, then the appeal of one will not bring up for adjudication the rights or claims of the other. *Walker* v. *Page*, 21 Gratt. 636; *Rorer* v. *R. N. Bank*, 83 Va. 608.

2. APPEAL *of one, the appeal of the other.*—Where the parties appealing and the parties not appealing stand upon the same ground, and their rights are involved in the same question, and equally affected by the same decree or judgment, the appellate court will consider the whole case and settle the rights of the parties not appealing, as well as those appealing.

3. IDEM—*Case at bar.*—Here the two causes were heard together, and the decree rendered in both, and passed on the plaintiffs' rights in each cause respectively, and to the extent to which it holds the property in controversy to be the separate estate of the wife, and not the property of the husband, it withdraws that property from the lien of the appellees' judgment. This court cannot pass upon the appellants' rights without passing on the appellees' rights, and the appellant, in bringing her rights here for adjudication, brought also those of the appellees.

4. MULTIFARIOUSNESS—*What constitutes—Cardinal rules.*—For certain cardinal rules, whereby the existence of multifariousness in any particular case may be determined, see opinion.

5. JUDGMENTS—*Confession—Power of attorney—Firm.*—A power of attorney to confess a judgment need not be under seal. *Coker* v. *Wynne*, 2 Va. L. J. 377. Power of attorney to confess a judgment executed by a firm, and the judgment confessed thereunder, are valid.

6. MARRIED WOMAN—*Action at law—Statute.*—Under act 1876-'7, p. 333, a married 'woman is capable of suing at law, and of taking a confession of judgment from her husband as well as another, and for conformity

sake he must be joined with her as plaintiff, though presenting the anomaly of one suing himself, which objection, however, is merely formal.

7. MARRIED WOMAN'S ACT—*How construed.*—This, being an enabling act, should not be construed strictly nor technically, but fairly, so as to carry out the legislature's intention.

8. IDEM—"*Acquired*"—*Possession—Title.*—In § 1, act 1876–'7, p. 333, the word "*acquired*" refers to the actual possession and control of the property by the wife, and not to the acquisition.of the title.

9. TENANCY BY THE CURTESY—*Choses in action—Marital rights.*—Under said act, husband's inchoate tenancy by the curtesy and his right to reduce into his possession his wife's choses in action are destroyed, neither being vested rights. *Breeding* v. *Davis,* 77 Va. 639.

10. WIFE'S EQUITY TO A SETTLEMENT.—However strong a case may be in favor of a settlement upon a wife for the support of herself and children, such settlement should never be made out of what is already her own separate estate, but should be made out of property which, but for such settlement, would become her husband's property.

Appeal from decree of circuit court of Pulaski county, entered at its March term, 1886, in the chancery cause wherein James C. Alexander and Sue J., his wife, were complainants, and H. Alexander, J. B. Alexander, M. J. Alexander, and J. C. Alexander, the last four trading as partners under the name of J. B. Alexander & Co., were defendants. The decree being unfavorable to them, the complainants obtained an appeal. Opinion states the case.

*James A. Walker,* and *Waller S. Poage,* for the appellants.

*J. C. Wysor,* for the appellees.

The appeal brings up both causes. *Anderson* v. *De Soer,* 6 Gratt. 371; *Rorer* v. *Roanoke Nat. Bank,* 83 Va. 608, and cases cited. Now, it is contended for the appellees that the decree is in nowise erroneous as to the appellants, but is erroneous as to the appellees in many particulars. The court erred in overruling the demurrers to the appellant's bill.

If it is the wife's bill, it is incompetent for her to join the

husband with her to sue the husband himself.   Story's Eq. Pl. 63 ; Sands' Suit in Eq. 207.   If it is his bill, it is absurd to say that a court of equity would entertain him in such a suit against himself.

Furthermore the bill is multifarious, and the demurrers should have been sustained for that reason.   M. J. Alexander is not a party to the larger judgment, but is a party to the smaller judgment, and hence, as to him, the bill sets up two distinct and independent matters, with one of which he has no connection whatever.   As to H. Alexander and J. B. Alexander, the former is principal in the larger judgment and the latter surety, and the latter is one of the principals in the smaller judgment and the former surety, and each of them is compelled to unite in his defense matters wholly unconnected with each other.   *Dunn* v. *Dunn*, 26 Gratt. 291.   Again, M. J. Alexander's demurrer to the bill should have been sustained, because the bill on its face sets up no cause of action as to him.   As stated, he is a party to the smaller judgment only.   Now the bill shows on its face that said judgment was confessed by W. S. Poage, under a power of attorney executed by one member of the firm of J. B. Alexander & Co., in the firm name, *under seal*, on a *bond* executed by one member of the firm in the firm name.

As a general rule, a partner cannot bind his co-partner by a contract under seal.   *Cady* v. *Shepherd*, 22 Am. Dec. 379; *Tapley* v. *Butterfield*, 35 Am. Dec. 374 ; *Turbeville* v. *Ryan*, 34 Am. Dec. 625 ; *Bond* v. *Aitkin*, 40 Am. Dec. 550 ; *Galt's Ex'or* v. *Calland's Ex'or*, 7 Leigh, 594.   A confession of judgment by a partner does not bind his co-partner.   *Bitzer* v. *Shunk*, 37 Am. Dec. 469 ; *Morgan* v. *Richardson*, 57 Am. Dec. 235.

In all cases the bill must show that the defendants are in some way liable to the plaintiff's demand, and if the plaintiffs in the case at bar relied on any of the exceptions to the general rule, that a partner cannot bind his co-partner by a contract under seal, it was incumbent on them to allege the facts that brought their case within the exception.   Because every fact

essential to the plaintiff's title to maintain the bill must be stated in the bill; otherwise the defect will be fatal. Story's Eq. Pl. 295; Sands' Suit in Eq. 10–12, and cases cited.

Again, the bill shows on its face that the said smaller judgment is a nullity. It was obtained by one member of a firm jointly with his wife against the firm. A partner cannot sue the partnership at law. Wharton on Contracts, sec. 807, and cases cited; *Bonaffe* v. *Fenner*, 45 Am. Dec. 279, and note and cases cited; *Wright* v. *Michie*, 6 Gratt. 358. But it is contended that the suit was the wife's, and she joined the husband for conformity. If so, we have the anomaly of a wife joining her husband with her in a suit at law against the husband. Besides, the anomaly is met with the proposition that *a wife cannot sue her husband at law.* Sands' Suit in Eq. 207; Story's Eq. Pl. 61, 62; Mitf. Pl. 68.

But it is said the judgment was confessed.

Consent cannot confer jurisdiction where it is denied by law. *Bent* v. *Graves,* 15 Am. Dec. 632; *Perkins* v. *Perkins*, 18 Am. Dec. 120; Freeman on Judgments, sec. 120; *Tyson* v. *Glaize*, 23 Gratt. 799. The court not having jurisdiction of the subject-matter, the judgment is a nullity although confessed. Freeman on Judgments, sec. 547; *Wade* v. *Hancock & Agee,* 76 Va. 620.

The bill is the wife's bill and should have been dismissed on the merits, because she had no such interest in the subject-matter as authorized her to institute the suit. The judgments sought to be recovered by her are not separate estate, but, to say the least, choses in action, of which her husband has the potential ownership, and he alone has the right to institute such a suit as was brought by her. 1 Minor's Inst. 304–7, and cases cited.

The court erred in holding that J. C. Alexander was entitled to *only* one-eighteenth in fee of the entire farm in the bill and proceedings mentioned. It is insisted that he is entitled to the two-ninths purchased by his wife in her name, so far as yet paid

for, subject to a charge in her favor of $232, with interest, say from January 1st, 1881, which it seems went into the land out of her separate estate. But in order to establish this proposition, it is necessary to show that the court *did not err* in holding that J. C. Alexander was entitled to a life estate as tenant, by the curtesy initiate in the one-ninth of said farm acquired by his wife under the will of her father. The land was devised by her father to his wife, Mrs. Jemima Boyd, for life, remainder to his children. He died in March, 1874, and she died in February, 1880. So, the said one-ninth vested in Mrs. J. C. Alexander, in interest, before the passage of the married woman's act, and came into her actual possession afterwards. The sole question then is, when did she acquire it within the meaning of the statute, before or after its passage ? (Acts 1876–77, p. 333; Acts 1877–78, pp. 247–8). She had a vested remainder. 2 Minor's Inst. 331, *et sequitur;* 1 Lom. Dig. 539. Seizin for curtesy may be at any time during the coverture. 2 Minor's Inst. 108. All the requisites of curtesy initiate are here. 2 Minor's Inst. 103, 111. The very terms of the statute show that it refers to an acquisition of title and not of possession. Otherwise the statute would have such a retrospective force as would impair vested rights, and it would be unconstitutional.

The statute cannot take away vested rights. *Dunn* v. *Sargeant,* 101 Mass. 339 ; *Rose* v. *Sanderson,* 38 Ill. 248; *Prall* v. *Smith,* 31 N. J. 244; Wells' Sep. Prop. Married Women, ch. 2, particularly pp. 93–95.

Now, as to the two-ninths purchased by Mrs. Alexander, they were purchased, so far as paid for, with the profits derived from the one-ninth. But it is contended that the said profits were her earnings as a separate and sole trader. There is no proof of this. Furthermore, such a position cannot be sustained by the law of the case. Our statute does not authorize a married woman to engage in business as a separate and sole trader, but simply to hold property so acquired as separate estate, and declares that it shall not be subject to the disposal of the hus-

band nor liable for his debts. Hence, if a married woman acts as a separate trader she must do so under the law as it stood before the passage of the act. Under that law she could not engage in a separate business unless she had separate estate, and then only with her husband's consent. *Penn* v. *Whitehead*, 17 Gratt. 503. A husband cannot settle his wife's future earnings upon her without a valuable consideration in exclusion of the claims of his creditors existing at the time of the settlement. *Campbell* v. *Bowles*, 30 Gratt. 662. But if he could, the principle would be of no avail to her in this case, since her earnings would be so intermingled with the profits of his capital as to preclude all possibility of an apportionment. Wells' Sep. Prop. Married Women, 195–6, and cases cited; *Dald's Trustee* v. *Geiger*, 2 Gratt. 98. Therefore, the deeds under which she derives title to the said two ninths should be set aside as voluntary and void as to H. Alexander's debt, which was contracted prior to their execution. Code 1873, ch. 114, sec. 2, p. 896; *Campbell* v. *Bowles, supra; Beecher* v. *Wilson,* and cases cited, 84 Va. 813.

The court erred in settling upon Mrs. Alexander the note executed to her by J. B. Caddell for $425. The said note is for a part of the $700 which she got from the Norfolk & Western Railroad Company, as her part of damages occasioned to the entire farm by the construction of a branch road through the same. Those damages were paid to her on account of the three-ninths which she was supposed to own. Two of the said ninths were her husband's in fee, and he was seized of the other in her right. Therefore, two-thirds of the said damages were his absolutely, and the other is to be treated as realty, subject to the same legal rights as existed in the original lands, *i. e.*, the husband's curtesy initiate. Stewart on Husband and Wife, sec. 136, Part 5, and numerous cases cited. But the proofs show that the wife has appropriated more than one-third of said damages to her own use, and therefore, to say the least, the J. B. Caddell note belongs to the husband, and is liable for his debts.

HINTON, J., delivered the opinion of the court.

As this case involves to some extent the construction of the act of assembly passed April 4, 1877, entitled " an act securing to married women, on conditions, all property acquired by them before or after marriage," see Acts 1876–77, ch. 329, p. 333, it is deemed advisable to set out in detail the sources from which the property claimed as the separate estate of the fema'e appellant was derived.

On the 6th day of May, 1874, as fully appears by the record, Sue J. Boyd, a *femme sole*, received, as a legatee of one Anne Davidson, the sum of $1,000 which, very soon after, to wit: in May, 1875, she loaned to H. Alexander, taking his bonds therefor, with J. B. Alexander as his security. And for this debt, with accrued interest, she subsequently, to-wit: in April, 1881, took a new bond from these same parties ; and this latter bond it is which is the foundation of the larger of the two judgments hereinafter mentioned.

In the month of March, 1874, Andrew Boyd, the father of the said Sue J., died, having bequeathed to her a legacy of $800, subject, however, to a deduction of $177, the value of a horse, bridle and saddle, which she had received as an advancement, which horse, with his equipments, seems to have been soon disposed of, exactly in what way does not appear. At the death of the testator, her father, his family consisted of his wife, this daughter, Sue J., and two unmarried sons, John and Andrew, his six other children having homes away.

After the death of the testator, the widow and her said three unmarried children continued to reside on the farm—the said children leasing the farm and personal property from the widow for a merely nominal sum and farming in partnership.

On the 30th of December, 1875, this Sue J. Boyd intermarried with James C. Alexander, a brother of the three Alexanders herein mentioned.

In November, 1878, she received the sum of $256, a part of

the legacy derived from her father, and the same was loaned by her to the firm of J. B. Alexander & Co., composed of J. B. Alexander, M. J. Alexander and her husband, J. C. Alexander, with H. Alexander as security ; and this debt is represented by the second and smaller judgment mentioned in this suit.   In April, 1881, she received the residue of said legacy, amounting to $367, but what disposition was made of it the record does not disclose.

Upon the death of her mother in February, 1880, Mrs. Alexander became seized and possessed in fee of a one undivided ninth part of a tract of land situated in Pulaski county, containing four hundred and fifty acres, and worth about nine or ten thousand dollars, and shortly thereafter the said Sue J. and her brothers, John and Andrew, bought out the shares of the other children and received conveyances therefor, the interest of Mrs. Alexander being conveyed to her sole and separate use, free from the control and debts of her husband,   By these conveyances, and the devise of her father, Mrs. Alexander and her two brothers  became the owners of all the real estate of which her father died  seized, each owning one undivided third.   And in making her purchase of two-ninths of this property it is admitted that she never received from her husband, directly or indirectly, one dollar in money, labor or assistance of any kind or character.   Indeed, so far from receiving assistance from her husband, the record shows that she gave him several hundred dollars to aid him in his business schemes and herself provided for her family.   About this time, in 1881 or 1882, and probably before she had entirely finished paying for her two-ninths of this land, she also received $232 as her distributive share of the personal property which her father had bequeathed to her mother as her absolute property, and $700, her one-third of the land damages assessed for the right of way for a railroad which it was proposed to run through this farm.

On the 23d of October, 1883, the said H. Alexander and J. B. Alexander, acting through their authorized attorney, in fact

confessed a judgment for the amount of the Davidson legacy, which they had borrowed, and interest. And on the same day the said J. B. Alexander, M. J. Alexander and J. C. Alexander, composing the firm, through the same attorney, acting under the same power of attorney, confessed a judgment on the said bond for $256, which, as we have seen, Mrs. Alexander had loaned that firm. Each of these confessions of judgment was in favor of J. C. Alexander and Sue J. Alexander, the husband being joined for conformity. On the 22d of October, 1883, the said H. Alexander recovered a judgment against the said J. C. Alexander for $882.86 and costs.

Such being the posture of affairs, at February rules, 1885, James C. Alexander and Sue J. Alexander filed their bill against J. B. Alexander, H. Alexander, M. J. Alexander and J. C. Alexander, the judgment debtors of the said Sue J. Alexander, to subject their real estate to the satisfaction of her said judgments. At the same rules the said H. Alexander filed his bill against the said J. C. Alexander, Sue J. Alexander and A. Boyd, in his own right and as executor of his father, A. Boyd, Sr. The object of this last-named suit was to have all the property of Mrs. Sue J. Alexander, real and personal, declared liab'e for her husband's debts, and to have the judgment of H. Alexander against J. Alexander set off against the judgment of Sue J. Alexander against H. Alexander and others.

J. B. and H. Alexander answered the bill of J. C. Alexander and Sue J. Alexander, and while admitting the justice of the debts against them, they claim that James C. Alexander is wholly insolvent, and insist on their right to set off their judgment against J. C. Alexander against the judgments of Mrs. Alexander against them.

The bill of H. Alexander was answered by Mrs. Alexander. Her answer, after setting forth the facts, denies that her property, real or personal, or any part of it, is liable for her husband's debts, or that the judgments against her husband can be set off against her judgment against H. Alexander and others. The

causes were heard together, and the circuit court, at the October term, 1885, thereof, rendered a decree setting apart to Mrs. Alexander the two judgments in favor of J. C. Alexander and wife, and the bond for $425, executed by J. B. Caddell, to whom she had loaned that much of the money received by her as damages from the railroad company, as the wife's equity, free from liability for the debts of her husband, but providing that J. B. Alexander and M. J. Alexander, principals, and H. Alexander, security, should be relieved from the payment of one-third part of the principal and interest of the judgment for $256, with interest from the 1st day of January, 1878; and this decree then proceeded to otherwise adjudge the rights of J. C. Alexander in the property of his wife.    And from this decree Mrs. Sue J. Alexander has appealed.

Upon an inspection of this record and decree, two preliminary questions arise, and must be disposed of before we proceed to discuss the more general question, how much of all this property which has been mentioned is to be regarded, under the act of April 4, 1877, known as the married woman's law, as the separate estate of this wife, Mrs. Sue J. Alexander.

The first of these questions is, did this appeal bring up both of these causes for review?    Upon this point there can be no sort of difficulty.    These causes were heard together and the decree was rendered in both suits.    That decree not only passes upon the rights of the plaintiffs in one bill, but it passes upon the rights of the plaintiffs in the other suit also.    To the extent that it holds the property in controversy to be the separate estate of the wife, and not the property of the husband, it withdraws that property from the lien of the appellees' judgment against her husband.    It is impossible, therefore, for this court to pass upon the rights of this appellant without passing upon the rights of the appellees also.    The appellant in bringing her rights here for adjudication has, therefore, of necessity, brought up the rights of the appellees also, and the suit instituted by the appellees must be regarded as before us as much as if it had

been brought here by direct appeal. *Anderson* v. *De Soer*, 6 Gratt. 371; *Rorer* v. *Roanoke Nat. Bk.*, 83 Va. 608. This is not the ordinary case of parties standing upon distinct and disconnected grounds. See *Burkholder* v. *Ludlam*, 30 Gratt. 255; *Simmons* v. *Lyle*, 27 Gratt. 931; but it is a case where the parties are equally affected by the decree, and therefore the appeal in this case brings up for review the rights asserted by the appellees in the other suit.

The next question is, did the court err in overruling the demurrer of M. J. Alexander to the bill filed by J. C. Alexander and wife. We think not. As Lord Cottenham said, in *Campbell* v. *Mackey*, 1 My. & Cr. 603, it is utterly impossible, upon the authorities, to lay down any rule applicable universally, or to say what constitutes multifariousness as an abstract proposition. For "the cases upon the subject are extremely various, and the court, in deciding them, seems to have considered what was convenient in the particular circumstances, rather than to have attempted to lay down any absolute rule." Yet, it will seldom, if ever, be found difficult to determine whether multifariousness exists in the particular case, if we will only bear in mind these cardinal rules upon the subject, namely, that a bill will always be deemed multifarious, where several matters joined in the bill against one defendant are so entirely distinct and independent of each other that the defendant will be compelled to unite, in his answer and defense, different matters wholly unconnected with each other, and as a consequence the proofs applicable to each would be apt to be confounded with each other, and great delays might be occasioned respecting matters ripe for hearing by waiting for proofs as to some other matter not ready for hearing; or again, where there is a demand of several matters of a distinct and independent nature, in the same bill, rendering the proceeding oppressive because it would tend to load each defendant with an unnecessary burden of costs by swelling the pleadings with the statement of the several claims of the other defendants, with which he has no connection.

Story's Eq. Pl. sec. 271; *Segar* v. *Parrish,* 20 Gratt. 679. And that a bill will not usually be regarded as multifarious, where the matters joined in the bill, though distinct, are not absolutely independent of each other, and it will be more convenient to dispose of them in one suit (see *Nulton* v. *Isaacs,* 30 Gratt. 738; *Hill* v. *Hill,* 79 Va. 592), or where the several defendants have one common interest centering in the point in issue. *Almond* v. *Wilson,* 75 Va. 643; *Batchelder* v. *White,* 80 Va. 103. The special objection urged in the present case is, that the bill is demurrable as to M. J. Alexander, because while he is a party to the smaller judgment, he is not a party to the larger judgment, and that as to him, therefore, the bill sets up two distinct and independent matters, with one of which he has no connection whatever. He has an interest, however, in having the liens of these judgments asserted in the same suit, which manifestly has been overlooked. But if that were not so, H. Alexander and J. B. Alexander have a right to have these causes of action united in one bill which should outweigh any supposed inconvenience which M. J. Alexander can possibly suffer. The larger judgment is against H. Alexander, as principal, and J. B. Alexander, as security, and the smaller judgment is against M. J. Alexander, J. C. Alexander and the same J. B. Alexander, as members of the firm of J. B. Alexander & Co., and the said H. Alexander as security for the firm. In this state of things it must be manifest that H. Alexander, as surety on the firm debt, and J. B. Alexander, as surety on the individual debt of H. Alexander, have each an interest in seeing that the liens of these judgments are enforced in the same suit, in order that costs may be saved and that each may see that these judgments are discharged by the persons primarily bound. While M. J. Alexander, though he may have no real estate of his own, is interested in seeing that the real estate of his partner, J. B. Alexander, is subjected to the payment of the debt of the firm rather than to the payment of the debt against H. Alexander. It is obvious, therefore, that both the interest and con-

venience of all parties was conserved by the course pursued in this case; that the bill is not multifarious; and that the demurrer on that ground was properly overruled.

Another objection urged by the appellees, which at first gave me some concern, was the circumstance that one of the two judgments, the liens of which are sought to be enforced against the real estate of the defendants in this suit, was confessed by an attorney in fact, acting under a joint power of attorney, executed by H. Alexander and the firm of J. B. Alexander & Co. (a firm in which the husband is a member), which power of attorney had three seals attached, to the first two of which were annexed the names of H. Alexander and J. B. Alexander, and to the last of which seals was annexed the firm name of J. B. Alexander & Co., and that a judgment thus obtained was a mere nullity, not capable of enforcement. But, upon reflection, whatever doubts I had upon the subject have been dispelled. The pith of the objection, it will be perceived, is that, as a partner cannot usually bind his co-partner under seal, see *Cady* v. *Shepherd*, 11 Pickering, 400 ; S. C. 22 Amer. Dec. 379 ; *Galt's Ex'or* v. *Calland's Ex'or*, 7 Leigh, 594, and especially that one partner cannot bind a co-partner by a confession of judgment, though under seal, see *Bitzer* v. *Shunk*, 1 W. & S. 340 ; S. C. 37 Amer. Dec. 469 ; *Morgan* v. *Richardson*, 16 Mo. 409 ; S. C. 57 Amer. Dec. 235, this judgment against the firm must be regarded as a nullity, except as to the partner whose name is subscribed to it. But these principles cannot be regarded as having any application to the case at bar. For, it having been expressly decided in this State that a power of attorney to confess a judgment need not be under seal, see *Coker, &c.,* v. *Wynne's Ex'or*, 2 Va. L. J. 377, and there being no proof that all the members of the firm were not consenting to the execution of the power of attorney, it must be held valid when it is assailed in this collateral way. *Lancaster* v. *Wilson*, 27 Gratt. 624 ; *Brockenbrough's Ex'or* v. *Brockenbrough's Adm'r*, 31 Gratt. 581 ; *Shadrack's Adm'r* v. *Woolfolk*, 32 Id. 709–10–11 ; *Neale* v. *Utz*, 75 Va. 484, and cases cited. It follows, therefore, unless there

is some inherent defect in the law which prevented this *feme covert* from suing at law or taking a confession of judgment, that the judgment confessed by this firm, by its attorney in fact, must be regarded as just as valid and binding upon the real estate of all these defendants as if it had been made to a single individual. And that, under the married woman's act (Acts 1876–77, p. 333), there is no difficulty in this respect we are all agreed. At common law, indeed, neither husband nor wife could sue the other. But this incapacity to sue each other arises out of the legal unity of husband and wife. By marriage the husband and wife are one person in law. Her existence is merged or suspended in his. For this reason she cannot contract with him, and as a matter of course cannot sue him. 1 Bl. Com. 442 ; 1 Chitty on Contracts, 251, note *p*. But when once this idea of legal unity has been so far severed that she may contract and be contracted with, as under this married woman's act she clearly may, we can perceive no valid reason why she may not as well sue her husband as another at law upon any contract made with him after the passage of the act. And so it has been held in at least three States. *Wilson* v. *Wilson*, 36 Cal. 447 ; *May* v. *May*, 9 Neb. 16 ; S. C. 31 Amer. Dec. 404 ; *Hall* v. *Hall*, 52 Tex. 294. And in New York it would seem that the right of the wife to sue a firm to which her husband belongs has been expressly adjudged, although in the absence of the report I cannot discover whether this was at law or in equity. *Adams* v. *Curtis*, 4 Lans. 164. The confession of judgment was to the husband as well as to the wife it is true, but this, whilst it is an anomaly, cannot militate against the validity of the judgment. The judgment is the judgment of the wife, and the husband has been joined simply in obedience to the act. *Hayes and Wife* v. *Va. Mut. P. Ass'n*, 76 Va. 225 ; *Farley* v. *Tillar*, 81 Id. 275 ; *Jones* v. *Degge*, 84 Id. 799 ; *Tate* v. *Perkins*, *ante*, p. 169. And in this case, the action being founded upon what was clearly a part of the separate statutory estate of the wife, there can be no possible objection to the judgment.

Even less can be urged against the propriety of the action of

the court in overruling the demurrer to the original bill.    That bill, though brought by husband and wife, was the bill of the wife, who certainly had the right to sue all of the defendants in equity; and the mere fact that the husband has been joined with the wife as a co-plaintiff whilst, as a member of the firm, he is also a defendant, although it presents the seeming anomaly of a husband suing himself, must be regarded as immaterial. Regularly, indeed, before the passage of the married woman's act, a suit of this character by a *feme covert* to recover a part of her separate estate, should have been brought by the married woman, as sole plaintiff, by her next friend, and the husband, even if not a member of the firm, should have been made a party defendant, so that he might, if he desired it, contest that it was her separate estate, although in such cases, says Story, the husband is sometimes in practice made a co plaintiff.    Story's Eq. Pl. sec. 63.    But, after all, the objection is merely formal, for the suit is the suit of the wife, the husband being joined for conformity, and there can be no objection to her suing him as a member of this firm in equity.    Story Eq. Pl. sec. 61, 62.

We come now to the question of first importance in this case, which is, how much and what part of the real and personal property, heretofore mentioned as having come to the possession of this married woman, is to be deemed her separate estate within the purview of this married woman's act.    Now, this act being obviously an enabling act, it should not be construed strictly, as in derogation of the common law, nor technically, but fairly, so as to carry out the intention of the legislature, which is to secure to the *feme covert*, as separate estate, free from the debts, liabilities and disposal of the husband, all of the property acquired at the times and in the ways pointed out in said act, and not in anywise to affect or change the personal relations of husband and wife which enter into the status of marriage.    2 Bishop on the Law of Married Women, §§ 18, 19, 20, 21, 22, 23; Wells' Sep. Prop. Married Women, § 8; Schouler on Husband and Wife, § 211.    For, says Judge Cooley in a late

case, "None of them (meaning the statutes) purports to operate upon the family relations; none of them takes from the husband his marital rights, except as they pertain to property, and none of them relieves him from responsibilities, except as they relate to the wife's contracts and debts.   He is still under the common law obligation to support the wife, and the services of the wife, which at common law were regarded as the consideration for this support, are still supposed to be performed in his behalf and in his interest, except where they are given to her individual estate or separate business.   The wife has a right to receive her support at the husband's domicile, unless she has lost it by misbehavior; and husband and wife together have a joint interest in and control of the children, which they cannot of right sever, and which are not even in contemplation of law regarded as distinct, though the courts are sometimes compelled to treat them as if they were so when difficulties arise which make legal intervention essential to the protection and welfare of the children." *Snyder* v. *People,* 26 Mich. 108; 2 Bish. L. Mar. Women, § 24.

The first section of this act, said Burks, J., speaking for the court in *Williams* v. *Lord & Robinson,* "secures a separate estate to the woman in the property *owned by her at the time of her marriage,* and the rents, issues and profits thereof, and also in the property acquired by her *during marriage as a separate and sole trader,* while the second section secures to her such separate estate in *all* property acquired by her *after and during marriage* in either of the modes designated in that section." 75 Va. 398.   In this act the word acquired refers to the actual possession and control of the property rather than to the acquisition of mere title.   Such seems to have been the construction given to a somewhat similar act by the supreme court of Vermont.   In that case the court held that under a statute enacting that all personal property and rights of personal action *acquired* by any married woman, during coverture, by inheritance or distribution, shall be held by her to her sole and

separate use, applies to a distributive share to which she is previously entitled, but which subsequently comes into her actual possession, on the ground that while the right to a distributive share in her father's estate became vested in the daughter immediately upon the father's decease, and she became possessed of an undivided portion of the property of the estate, subject to the right of the administrator to use a part of the same for the payment of debts and expenses of administration, yet the particular property did not become absolutely vested in her until the decree of the probate court, making distribution of the estate, became absolute. *White* v. *White*, 47 Vt. 507.

This act, as was said by Judge Burks in *Williams* v. *Lord & Robinson, supra,* makes radical changes in the legal capacity and property rights of married women in this State. By it she becomes the absolute owner of all the real and personal property " which she shall own at the time of her marriage, and the rents, issues and profits thereof," and also of all the real and personal property or estate thereafter acquired, in any of the following modes : that is, " by gift, grant, purchase, inheritance, devise, or bequest," or as a separate and sole trader, subject only to curtesy consummate in her husband in the event that all the prerequisites shall exist and he shall survive the wife. Nor do we perceive that there is anything in the act which necessarily impairs any vested right. For, whilst the inevitable effect of any fair construction of the act is to destroy curtesy initiate and to deprive the husband of the right to reduce the choses in action of the wife, including herein a legacy or distributive share, into possession, yet it is believed that neither of these inchoate rights is a vested right which may not be intercepted by act of the legislature and taken from the husband. In *Breeding* v. *Davis,* 77 Va. 639, this was distinctly held to be the case as to curtesy initiate where the land descended upon the wife after the passage of the married woman's act. The language of Judge Lacy, speaking for the court, is " it is clear that the husband has no interest whatever in the lands of the wife during

coverture; * * * Hardin L. Crum had no interest in his wife's lands which the circuit court could sell, and that * * court erred in its decree * * whereby it dissolved the injunction which restrained the sheriff from selling the lands of the wife to satisfy the debts of the husband, who had no interest in the land * * subject to levy and sale for his debts"; and he then says that the right to the rents; issues and profits of the land had never vested in the husband. And this may be said to be generally true of this right of tenancy by the curtesy initiate when intercepted by an act of this kind. Says Bishop on this subject: "After, not the marriage only, but the birth of a child also, capable of becoming heir to the wife's land, the husband has added to his estate for the joint lives of himself and wife the possibility of holding the land for his own life subsequently to her death, conditioned on his surviving her. That is, this is one way of stating the doctrine, and, if this is the correct way, it would seem to follow that curtesy initiate stands on the same ground as dower, and legislation may cut it off at any time before it becomes consummate * * ." 2 Bish. L. M. Women, § 43. And Wells, in his book on the Separate Property of Married Women, says: "The very direct consequence of giving the wife—as all the statutes now do in a greater or less degree—the control of her property, free from the interference of her husband, is to postpone his right of curtesy until her death, and hence to render it contingent on his surviving her." Wells on Sep. Prop. of Mar. Women, § 38. The same view is generally held as to the right of the husband to reduce into possession the choses in action of the wife. It is not generally regarded as a vested right which may not be lawfully taken away or impaired by the legislature. 2 Bish. L. M. Women, §§ 45, 46; Schouler's Husband and Wife, § 156; *Henry* v. *Dilley*, 1 Dutcher, 302; *Goodyear* v. *Rumbaugh*, 13 Penn. St. 480; *Mellinger* v. *Bauswan*, 45 Penn. St. 522; *White* v. *White*, 47 Vt. 502; *Clarke* v. *McCreary*, 12 S. & M. 347.

Now, applying these principles to this case, it is perfectly

manifest that the decree appealed from is erroneous in almost every particular.   By that decree it was adjudged that H. Alexander was not entitled to set off his judgment against the two judgments of Sue J. Alexander; that these two said judgments and the bond of Caddell should be set aside as the wife's equity, and that all the obligors in the smaller judgment, except J. C. Alexander, shall be relieved from the payment of one-third thereof.   It is further decreed that J. C. Alexander was tenant by the curtesy of one-ninth of the real estate, of which Andrew Boyd died seized, and a sale thereof is decreed to satisfy the judgment of H. Alexander against J. C. Alexander.   It is also decreed that J. C. Alexander was entitled to a fee simple estate in one-eighteenth of the real estate of which the said Andrew Boyd died seized, and it is also decreed that this shall be sold to satisfy the judgment·of the said H. Alexander.   And, finally, it is decreed that J. C. Alexander was the owner of one-sixth of the personal property and growing crops upon the land, and a sale thereof is also decreed for the payment of the aforesaid judgment of the said H. Alexander.

Now, as to the first of these provisions, it is clear, and indeed it is conceded, that the larger judgment, held by Mrs. Alexander against H. and J. B. Alexander, was properly set aside as the wife's equity.   But it was plainly erroneous for the court to relieve all of the obligors except J. C. Alexander from the payment of the smaller judgment, and then set it and the bond due by Caddell aside as a part of the wife's equity also, for the simple reason that both of these demands are clearly part of the statutory separate estate of this married woman.   The money due by judgment being a part of the legacy from her father, which never came into her possession until after the passage of the married woman's act, and the money for which the Caddell bond was taken being a part of the damages allowed her by the commissioners in 1882 for the right of way of the Cripple Creek railroad over her land.   Nor had the court any right to release any of the obligors from the payment of one-third of this judg-

ment for $256.  It was a debt of the firm, for which not only the firm and each member thereof, but the security as well, was liable.  It was her separate estate under the statute, and she could have recovered it from her husband if he had been the sole obligor in the bond; and it is not perceived upon what principle it is that the other obligors are held liable to a less extent than the husband because of his being joined with them in the bond.

Again, the court erred in deciding that J. C. Alexander was tenant by the curtesy of one-ninth and entitled in fee simple to one-eighteenth of the Boyd land.  For, as we have seen, tenancy by the curtesy initiate has been done away with by the married woman's act, and there is not a particle of evidence that we can find justifying the idea that any part of this land owned by the wife was bought with money belonging to her husband or to which he could possibly be entitled.  As the record clearly shows, this husband was an amiable, but poor and thriftless being, constantly drawing on his wife for money and oftentimes dependent upon her for the necessaries of life, whilst the wife was an economical, energetic, business woman who, with the tacit consent at least of her husband, was engaged as a sole and separate trader in the business of keeping a boarding-house. And that with the proceeds derived from this source, and not from the earnings of her manual labor, and her share of the rents, issues and profits of the farm since the year 1877, which under the careful and prudent management of her brother has yielded well, and perhaps other separate estate, which, without her testimony, we cannot know, she has purchased and nearly paid for two-ninths of this farm of four hundred and fifty acres. 2 Bish. L. M. Women, 529.

Under these circumstances we can perceive no plausible pretext for the claim that any part of this woman's real estate should be subjected to the payment of this judgment against her husband.  For if we could assume, what certainly is not proved and seems utterly improbable, that Mrs. Alexander has

received some small sum to which the husband was entitled under the technical rules of law, she would certainly be entitled in a court of equity to reimburse her separate estate for any outlay she may have made in the support of herself and children before she could be called upon to satisfy the demands of his creditors.    2 Bish. L. M. Women, §§ 892, 894, 895; *McCormick* v. *McCormick*, 8 Leigh, 66; *Meth. Church* v. *Jaques*, 1 Johns Chy. R. 458.

Finally, the court erred in decreeing that the husband was entitled to one-sixth of the personal property and growing crops, and in decreeing a sale thereof for his debts.   There is no proof that any part of it was paid for out of any fund to which the husband was entitled, and it is admitted that he never contributed one dollar towards paying for said property, and all of it has been acquired since the 4th April, 1877, presumably, out of her separate property.

We need only add that the decree of the circuit court of Pulaski county is erroneous in the respects indicated, and that for these errors it must be reversed and annulled, and the causes must be remanded with directions to enter a decree in conformity with the views herein expressed and to be further proceeded in to final decree.

DECREE REVERSED.