STATE v. MAY ARNOLD.[1]

January 9, 1931.

No. 28,077.

John E. Regan and A. J. Berndt, for appellant.

Henry N. Benson, Attorney General, James E. Markham, Deputy Attorney General, and Frank E. Morse, County Attorney, for the state.

Loring, J.

Defendant was convicted of grand larceny in the first degree and appeals from an order denying her motion for a new trial. The money for the theft of which she was convicted was approximately $2,000 belonging to her husband.

The appeal squarely raises the question whether or not in the present state of the law in Minnesota a wife may be guilty of the larceny of her husband's property. At common law such a crime could not be committed by the wife, nor could a husband commit larceny of his wife's personal property. The theory was that the unity of the spouses in the marriage status precluded the larceny.

It is now contended that because of the married woman's act (G. S. 1923 [2 Mason, 1927] § 8616, et seq.) and the fact that our penal code is purely statutory a wife is wholly distinct from her husband, in legal status as well as in full control of her property rights, and that she comes within the phrase "every person" as used

[1]Reported in 235 N. W. 373.

in the larceny statute (G. S. 1923 [2 Mason, 1927] § 10358). We think the logic of the situation leads to the opposite conclusion.

If there were no married woman's act and the personal status and property rights of married people remained as at common law, there would be no contention that the larceny statute, by the mere use of the phrase "every person," included married women.

The case of Commonwealth v. Hartnett, 3 Gray (Mass.) 450, was one where a woman was charged with larceny of property, apparently that of a third person, from a building belonging to her husband. The statute of Massachusetts provided an increased penalty for "every person who shall commit the offense of larceny, by stealing in any building * * *." The court held that the statute did not apply to a married woman who committed the offense in her husband's building. It based this holding on the construction given by the English courts to the statute of 12 Anne, c. 7, passed in 1713 and now repealed, but which had never been in force in Massachusetts. That statute applied to "every person" who committed the offense "in any dwelling-house * * *." The court said [3 Gray, 451]:

"The construction previously given to the same terms, by the English courts, is the construction to be given to them by our courts. * * * For if it were intended to exclude any known construction of a previous statute, the legal presumption is, that its terms would be so changed as to effect that intention."

Our own court has held that we may go to the common law to determine the meaning of common law terms used in our penal code. Benson v. State, 5 Minn. 6 (19).

We may therefore conclude that the use of the phrase "every person" in our larceny statute does not of itself, without the aid of the married woman's act, make the defendant a criminal. Is she a criminal by implication? While the rule of strict construction in favor of the accused no longer prevails in this state, we cannot believe that the "fair import" rule justifies the creation of a crime by any implication which may arise out of the married woman's act.

In our opinion the status of marriage has not been modified by the married woman's act, and only property rights and contracts are affected thereby. Our own cases sustain that view. Drake v. Drake, 145 Minn. 388, 177 N. W. 624, 9 A. L. R. 1064, and Strom v. Strom, 98 Minn. 427, 107 N. W. 1047, 6 L.R.A.(N.S.) 191, 116 A. S. R. 387.

The common law rule that a wife could not commit larceny of her husband's property rested not alone upon the doctrine that her property and possessions were his but upon the unity of husband and wife which marriage created; the community of interest in the social institution of marriage. The technical ownership of his wife's personal property by the husband might have been sufficient to protect him if he were accused of its theft, but certainly his ownership and control of her personal property was not alone sufficient to justify the doctrine as to her immunity. Something more was needed to protect her, and that was the unity of the social relationship of marriage, giving the word "social" its broadest meaning.

In the case of State v. Phillips, 85 Ohio St. 317, 97 N. E. 976, 977, 40 L.R.A.(N.S.) 142, Ann. Cas. 1913B, 250, where a woman was accused of larceny of her husband's money, it was contended that the married woman's act had so changed her status that she might be guilty of larceny of her husband's property. The supreme court of Ohio, speaking through the Chief Justice, said [85 Ohio St. 324]:

"The unity of husband and wife, as recognized in the common law, is founded not merely on a community of goods, but upon the recognized obligation of both to the family and to society. The unit of society is not the individual but the family; and whatever tends to undermine the family, by the irrepealable laws of nature will crumble and destroy the foundations of society and the state. So that the peace and sanctity of the home and family are the ultimate reason for the common law rule. We do not think that we can safely hold by mere inference, that the legislature has taken such a long step in the direction of destructive legislation."

In the same opinion the court said [85 Ohio St. 323]:

"Indeed we doubt that any member of that body had in contemplation such a result when he voted for the statutes which protect the individual rights of married people. The legislature was contemplating the expressed purpose of the statutes, and that only. They were not at that time considering crimes and criminal procedure; and surely they cannot be presumed to have intended a thing which they did not clearly express and which is fraught with such far-reaching and radical consequences to the law of the domestic relations, for the abrogation of the doctrine of the legal unity of husband and wife, when pushed to its logical conclusion, *would not only create crimes where there were none before,* but would also authorize a husband or wife to maintain civil actions for tort against the other, such as actions for personal injuries, assault, false imprisonment, or slander  *  *  *  thus multiplying a hundredfold the unhappy differences which have to be settled in the divorce courts. We cannot assume that the legislature intended this without very clear evidence of such an intention in the language of the statutes."

Judge Cooley, speaking for the supreme court of Michigan, in the case of Snyder v. People, 26 Mich. 106, 108, 12 Am. R. 302, where a husband was accused of burning his wife's house, in commenting upon the effect of the married woman's act upon the crime of arson, said:

"It remains to be seen whether the statutes have introduced any changes which would affect the case.

"The statutes upon which the question arises, are those for the protection of the rights of married women. But it is to be observed, that those do not in terms go beyond the ensuring to the wife such property as she may own at the marriage, and acquire afterwards, and the giving to her the power to protect, control and dispose of the same in her own name, and free from the interposition of the husband. None of them purports to operate upon the family relations; none of them takes from the husband his marital rights, except as they pertain to property, and none of them relieves him

from responsibilities, except as they relate to the wife's contracts and debts. He is still under the common-law obligation to support the wife, and the services of the wife, which at the common law were regarded as the consideration for this support, are still supposed to be performed in his behalf and in his interest, except where they are given to her individual estate, or separate business. The wife has a right to receive her support at the husband's domicil, unless she has lost it by misbehavior, and husband and wife together have a joint interest in and control of the children, * * *. The unity of man and woman in the marriage relation, is no more broken up by giving her a statutory ownership and control of property, than it would have been before the statute, by such family settlement as should give her the like ownership and control. At the common law, the power of independent action and judgment was in the husband alone; now it is in her also, for many purposes; but the authority in her to own and convey property, and to sue and be sued, is no more inconsistent with the marital unity, than the corresponding authority in him. She is still presumptively his agent to provide for the household, and he is not deprived of the rights, or relieved of the obligations of head of the household, except as by their dealings and intent to that effect is indicated.

"So far from an intent having been manifested on the part of the legislature to regard the family as simply a voluntary association of two persons, legally independent of each other, with their progeny, several of the changes have been in the direction of a unification of interests. Thus, the husband is deprived of all authority to sell, mortgage or otherwise charge the homestead without the wife's consent, though his title thereto may be complete and absolute. * * * He is also precluded from selling or encumbering such personal chattels as are exempt by law from execution, unless with her assent (Comp. L. § 4465); and if he shall attempt to do so, she may bring action to recover the same in her own name. Comp. L. § 3294. These powers and privileges in respect to the husband's property are not conferred on the wife for her own benefit exclusively, or in order to give her interests independent of the husband; but they

are given her for the benefit of the whole family, in order that they may not be deprived of the reasonable means of support which the law has endeavored to save to them, and to the end that they may be kept together as a family, if such shall be their desire. And after the death of the husband and father, the family unity is still regarded in the protection which is given to the homestead."

The Supreme Court of the United States, in Thompson v. Thompson, 218 U. S. 611, 31 S. Ct. 111, 54 L. ed. 1180, 30 L.R.A.(N.S.) 1153, 21 Ann. Cas. 921, held that the unity of marriage was not so far destroyed by the married woman's act of the District of Columbia as to permit a recovery of damages for assault and battery by one spouse against the other. In considering the married woman's act, the court held that it was intended to invest a wife with the control of her property, not to confer upon her a right of action against her husband for a personal tort; that such a radical change in the policy of centuries would not have been wrought except by, language so clear and unmistakable as to leave no doubt of the legislative intention.

The supreme court of Virginia, in Alexander v. Alexander, 85 Va. 353, 367, 7 S. E. 335, 341, 1 L. R. A. 125, held that their married woman's act did "not in anywise * * *. affect or change the personal relations of husband and wife which enter into the status of marriage."

In New York the court of appeals held, in referring to such acts:

"The provisions of the statutes we have been considering, relate exclusively to the property rights of the parties to the marriage contract. *Other marital rights are not affected by them."* Quilty v. Battie, 135 N. Y. 201, 207, 32 N. E. 47, 48, 17 L. R. A. 521.

Illinois holds the same, Thomas v. Thomas, 51 Ill. 162, 165, and that the acts should be interpreted in the light of the evil intended to be cured, not literally, Cole v. Van Riper, 44 Ill. 58, 63.

Did our own legislature intend by implication to create the crime of larceny where either spouse wrongfully appropriated the personal property of the other? If it did so intend, would it not have used

language so clear and unmistakable as to leave no room for doubt? To create crimes was not the purpose of these acts. Their purpose was to protect and extend the rights of married women, not to subject them to penalties not theretofore existing. Crimes were farthest from the thoughts of the advocates of these acts, as well as from those of the legislators who enacted them. Their advocates were doubtless ardent feminists who sought equality of property rights before the law, and an accusation that they were trying to break up the marital unity in any other respect and make it a mere legalized cohabitation would have been resented by them as well as by the legislatures which yielded to their persuasion. Marriage was looked upon at the time these acts were passed as a sacred social institution, and the family as the fundamental basis of civilization.

The gist of the purpose of our legislature is expressed in the phrase, "and every married woman shall receive the same protection of all her rights as a woman which her husband does as a man." Up to the time this law was passed no recourse could be had to the criminal law in case of misappropriation by the wife, and certainly no additional protection was intended to be conferred on men's property by the married woman's act. These acts referred to civil rights and remedies only; they did not purport to create any public offense. As said in Strom v. Strom, 98 Minn. 427, 428, 107 N. W. 1047, 1048, 6 L.R.A.(N.S.) 191, 116 A. S. R. 387:

"This statute gives to a married woman the same right of action in her own name for any injuries sustained to her reputation, person, or property as her husband has in his own name to maintain an action for like injuries sustained by him, *and no other or greater right. The purpose of the statute was to place the husband and wife on an equality as to actions by either for injuries to person, reputation or property.* The husband cannot and never could bring an action against his wife for a personal tort committed by her against him during coverture."

And in Drake v. Drake, 145 Minn. 388, 390, 177 N. W. 624, 9 A. L. R. 1064, it was said:

"She was placed upon an equality with her husband in respect to the management and control of her separate property. * * * In other words, that the rights and privileges granted by the statute had reference solely to the management, control and protection of her property rights."

In the case of Gillespie v. Gillespie, 64 Minn. 381, 383, 67 N. W. 206, 207, a wife recovered from her husband for conversion of money. Judge Mitchell said:

"The clearly declared policy of the statute in respect to the relation of husband and wife is that the latter can, in her own name and in any form of action, sue the former to enforce any rights affecting her *property,* the same as if he were a stranger."

Obviously, this refers to civil actions relating to property only and does not intimate that any crimes were created by the statute. Even the civil actions do not extend to personal torts; and if personal torts are not created by the act we think it would be a strained construction to say that crimes are so created. The criminal statutes are not private remedies; they are for public protection. To use them as personal remedies or for personal or individual purposes is frowned upon by the law.

In Woltman v. Woltman, 153 Minn. 217, 189 N. W. 1022, where it was held that a wife could not maintain an action for negligence against her husband, the Strom and Drake cases were cited with approval. The court said [153 Minn. 218]:

"These cases were thoroughly considered and deliberately decided. The reasons for the decisions are fully stated. We think the decisions should be adhered to."

Those reasons indicate clearly that the scope of the married woman's act should be confined to property rights. The court said further, in the Woltman case [153 Minn. 218]:

"This statute was fully considered in the Strom and Drake cases. It was held that it was the purpose of the statute to place husband and wife on an equality as to the right to bring action in tort, and

that it gives to the wife the same right as her husband possessed and no more. The husband has no right to sue his wife for her personal tort. Hence the statute gives her no such right against him. The privilege of this sort of litigation is denied to both."

If the legislature in its wisdom desires to create the crime of larceny in cases of this character it has the undoubted power to do so. That is a matter of policy, and policy is for the legislature, which has the power of making laws, a power denied to the courts. In our opinion the legislature has neither expressly nor impliedly acted to create the offense with which the defendant is charged.

The order appealed from is reversed.

HOLT, J.
I dissent.
HILTON, J.
I dissent.