STATE v. JONES.

STATE v. JONES.

(Filed April 21, 1903.)

TRESPASS—*Husband and Wife—The Code, Sec. 1120.*

A husband is not indictable for a trespass on the lands of his wife after being forbidden by her.

CLARK, C. J., dissenting.

INDICTMENT against Albert Jones, heard by Judge *H. R. Bryan* and a jury, at January Term, 1902, of the Superior Court of WAKE County. From a judgment of not guilty on a special verdict the State appealed.

*Robert D. Gilmer, Attorney General,* for the State.
No counsel for the defendant.

MONTGOMERY, J. The wife of the defendant, who was the owner of the premises on which they resided up to November, 1892, left on that day and has remained off ever since, having good grounds for believing that the defendant had been for sometime living in adultery with a woman in the neighborhood. She had, before she left her home, urged upon the defendant to leave her premises that she might live there alone, and he refused to do so. The defendant had been living on the land all the while, although shortly after having left herself, she ordered the defendant to leave and not to enter again. Upon his frequent ingress and egress and refusal to leave, a warrant was issued for entering upon the land after being forbidden. He was found guilty in the

court of a justice of the peace and fined.   From that judgment he appealed to the Superior Court.   The above facts were found by a special verdict in the Superior Court, and upon them the court adjudged that the defendant was not guilty.

We can see no error in the judgment.   Notwithstanding the fact that the wife may have good grounds to suspect the defendant husband of immoral conduct, they are still in the eye of the law husband and wife, and there has been no separation by a decree for a divorce *a mensa et thoro*.   This case presents the novel feature of a wife seeking a judicial separation from her husband by the criminal action of trespass.

In *Manning v. Manning*, 79 N. C., 293; 28 Am. Rep., 324, the husband and wife occupied the same house and farm, the property of the wife, and the action by the wife against the husband was an action of ejectment.   He had taken possession of the property, was using it as his own, and had been appropriating the rents and profits to his own use without applying any part of the same to the wife's comfort and support.   This court held that the wife was entitled to an order for the possession of the property, but that the husband could not be ejected from the premises, for that was "a proposition fraught, as I conceive with the most dangerous consequences to society, to-wit, that a wife may under the forms and with the sanction of law, at her own will and without cause, eject her husband from her dwelling and society because the house is her separate property.   I can never agree that either husband or wife can, without committing those offences which the law designates as causes of divorce or separation, invoke the aid of the courts to render a judgment, the unavoidable consequences of which would be a separation of man and wife.   Nothing less than an express or positive statute to that effect can control or destroy the highest of

all the obligations imposed in the marriage relation—that man and wife shall live together.  Any decision of the courts, the direct or incidental result of which is to destroy the sanctity of marriage in that particular, can but weaken and undermine the surest foundations upon which the structure of society and through it of political institutions rest, and command our confidence."  The court further said: "By the matrimonial contract the husband and wife are to live together, and the law, divine as well as human, has, whether wisely or unwisely, made him the ruler of the household, and the well understood and well defined legal duties, relations and obligations of the marriage compact cannot be abridged or changed at the will of either, or otherwise, or for other causes than are prescribed in the statute in relation to divorce and alimony."  In that case the parties were occupying together the premises, but does the fact in the present case that the wife has abandoned her husband and their home and made her residence elsewhere, alter the principle involved in the case from which we have just quoted? Are not the purpose and effect of the present action, if successful, the separation of the husband and the wife and the destruction of the home relations?  Can it be that a wife may, whenever she sees fit leave her home and take up her residence in another place, refuse the society of her husband and indict him as a trespasser if he puts his foot upon the wife's abandoned property, the place he has made his home?  Have we reached that stage of social progress when the sacred relation of husband and wife and the hallowed influences of the home are converted into mere traditions without power to influence, and dreams instead of relations?  It would seem so to us if we were to hold that the indictment in this case was lawful and proper.

If the husband should commit any of those acts which the

STATE v. JONES.

law points out as causes of divorce, the wife may effect a separation from him under the Chapter of the Code on Divorce and Alimony, and only in that way. The case of *Taylor v. Taylor,* 112 N. C., 134, does not have application to the facts of this case. There, the plaintiff who was the wife of the defendant brought an action against him to recover possession of her land and for an injunction to restrain him from interfering with her exclusive control and management of her property. The court said "The plaintiff is entitled to the possession of the land, exclusive of the husband, until a reconciliation has been effected." But the parties had been divorced *a mensa et thoro.*

No Error.

CLARK, C. J., dissenting: This is a criminal action begun before a justice of the peace against the defendant for entering upon a certain tract of land, the property of his wife, after being forbidden by her so to do, and without license therefor. The Code, Sec. 1120. Found guilty and fined one dollar and costs, the defendant appealed to the Superior Court where the jury found, in a special verdict, that the wife of the defendant, having good grounds to believe that her husband was, and had been for some months, living in adultery with a woman in the neighborhood, urged him to leave the premises that she might live alone. This he refused to do; whereupon she left and has remained away ever since. She then ordered her husband to leave that tract of land and not enter on it again, but he refused to observe this order, and has since that time repeatedly been off of said land but has always returned thereon, living there continuously, contrary to her will.

Upon these facts it was error in his Honor to hold that the defendant was not guilty. The Constitution, Article X, Sec. 6, provides that the property of any female whether acquired before or after marriage *"shall be and remain the sole and*

STATE *v.* JONES.

*separate property of such female."* The only restriction
being the requirement of the written assent of the husband
to conveyances by her. In *Tiddy v. Graves,* 126 N. C., at
p. 622, it was held, quoting and approving the exact language
of Merrimon, C. J., in *Walker v. Long,* 109 N. C., 510, as
follows: "This provision is very broad, comprehensive and
thorough in its terms, meaning and purpose, and *plainly
gives and secures to the wife the complete ownership and
control of her property as if she were unmarried,* except in
the single instance of conveying it. She must *convey* with
the assent of the husband. It clearly excludes the ownership
of the husband as such, and sweeps away the common law
right or estate he might at one time have had as tenant by
the curtesy initiate."

Since the Constitution, as has thus been held uniformly,
secures to the wife the *"complete ownership and control of
her property as if she were unmarried"* and has "swept away
any common law right or estate the husband might at one time
have had as tenant by the curtesy initiate," it follows that
the defendant had no more right to enter upon his wife's
land, *qua* land, and continue to reside there after being for-
bidden to do so than if she were unmarried. This court has
never trenched upon the above plain provision of the Consti-
tution so as to give him a right to occupy her realty and use
it for his residence, in her permanent absence therefrom,
contrary to her prohibition. His occupation of the dwelling
and continuous use of the premises might well prevent her
getting a tenant or exercising the *complete ownership and
control* guaranteed to her by the Constitution. All the court
has ever held is that when the wife is residing upon the prem-
ises the husband has the right of ingress to her and egress
because of his marital right to enjoy her society. *Manning
v. Mannig,* 79 N. C., 293; 28 Am. Rep., 324, which is based
throughout on this ground. This right it said he cannot be

deprived of except by proceedings in divorce, either absolute or *a mensa et thoro.* But when, as here, the wife does not reside upon the premises but has purposely removed therefrom to prevent his coming there, there is no right of ingress and egress to her. She is not there. He has no right *jure mariti* to occupy the residence when she has left it permanently, or to enter upon any of her lands (save to come to her when there) if forbidden by her so to enter. Her ownership and control are sole, and excludes, as Merrimon, C. J., above says, any common law right the husband ever had. As reiterated in *Tiddy v. Graves, supra,* the right to tenancy by the curtesy after the death of the wife is purely statutory, and then only as to property the wife does not devise. He has no right whatever as to her land while she is living. His right of ingress and egress is not as to her land, but as to her presence, and does not exist as to any premises where she is not.

In *Jones v. Coffey,* 109 N. C., at p. 518, it is stated that the husband "has the right of ingress and egress and *marital occupancy* but can assume *no dominion* over her land or rents, except as her properly constituted agent," and in *Thompson v. Wiggins, Ibid,* at p. 510, it is said that such rights give him, as against the world, a bare seizin that makes him a freeholder, and as such eligible to sit on juries, but with *no dominion over the realty,* and with only the right of ingress and egress and occupancy, recognized by *Manning v. Manning, supra,* and that, as we have seen, is only egress and ingress to her and joint occupancy of the dwelling where she resides. In *Ex Parte Walls,* 130 N. C., at p. 242, Douglas, J., said that a surviving husband "had no interest whatever in the land, not even the right of curtesy, as that was destroyed by the will of the wife."

As late as *State v. Black,* 60 N. C., 262 (1864); 86 Am. Dec., 436, this court reaffirmed the common law doctrine that

STATE *v* JONES.

a husband had a right to whip his wife "if no permanent injury be inflicted," Pearson, C. J., saying: "A husband is responsible for the acts of his wife, and he is required to govern his household, and for that purpose the law permits him to use towards his wife *such a degree of force as is necessary* to control an unruly temper and make her behave herself." Blackstone and other authorities to same effect, cited in *Vann v. Edwards,* 128 N. C., at top of p. 428. Ten years later in *State v. Oliver,* 70 N. C., 60 (1874), Settle, J., says: "The courts have advanced from that barbarism until they have reached the position that the husband has no right to chastise his wife under any circumstances." Though the Constitution of 1868 contain no provision as to the "rights of person" of married women, its enhancement of their status by their complete emancipation as to property rights rendered inevitable this change in the decisions. Married women were recognized as being *sui juris.* They no longer forfeited their rights by the fact of marriage.

While the "rights of person" have been thus secured to married women by judicial decision, the Constitutional provision as to their property rights is equally as broad and explicit, that "all their property, real and personal", whether acquired "before or after marriage shall be and *remain the sole and separate property* of such female" with complete and absolute control over the same, even to the power of disposing of the same by will, the sole exception being (and no statute can add any further restriction) that her "conveyances" require the husband's written assent.

The effect of similar provisions elsewhere are thus clearly summed up by Judge Cooley—*Snyder v. People,* 26 Mich, 109, 112; 12 Am. Rep., 302:—"At the common law, the power of independent action and judgment was in the husband alone; now it is in the wife also, for many purposes; but the authority in her to own and convey property, and to sue

and be sued, is no more inconsistent with the marital unity than the corresponding authority in him. She is still presumptively his agent to provide for the household, and he is not deprived of his rights or relieved of the obligations of head of the household, except as by their dealings and intent to that effect is indicated. . . . Her property is hers alone, but the *residence* is equally his. . . . . The wife's dwelling can be considered that of the husband only while he makes it such in fact, and there is no such legal identity as can preclude her house being considered in *legal proceedings against him* as the dwelling house of 'another' when it is no longer his abode." *A fortiori,* it cannot be *his* dwelling house when it has ceased to be hers.

In *Martin v. Robson,* 65 Ill., 129; 16 Am. Rep., 578, it is well said, after summing up the duties and obligations of husband and wife: "These duties and obligations at common law were not the result of the arrangement of their property but of the contract of marriage and the relations thereby created," which remain still unchanged, though "as to the separate property of the wife she is now the same as a *feme sole.* She need not join her husband in a suit to recover it, or for trespass to it. She may even prosecute a suit against him for *any unlawful interference with her property."*

Our Code, Sec. 178, expressly provides that "when the action concerns her separate property she may sue alone", and also that she "may sue her husband" in regard thereto. *Shuler v. Millsaps,* 71 N. C., 297 (in which the court says, "We are called upon to make a new departure leaving old ideas behind, and adapting ourselves to the new order of things"); *McCormack v. Wiggins,* 84 N. C., 278; *Manning v. Manning,* 79 N. C., 293; *McGlennery v. Miller,* 90 N. C., 215; *Taylor v. Apple, Ibid,* at p. 346; *Barnes v. Barnes,* 104 N. C., 613.

STATE v. JONES.

The right of the wife "to the preservation and disposal of her separate property", says Smith, C. J., in *State v. Edens,* 95 N. C., at p. 695; 59 Am. Rep., 294, "she may now assert against her husband as well as against a stranger in an action at law, as is decided in *Manning v. Manning,* 79 N. C., 293." The "action at law" is not there restricted to the civil side of the docket and there is no reason why it should be if the wife thinks a criminal proceeding, in this case, can assert and protect her right to the exclusive control or her property more expeditiously and cheaply, or is a more appropriate remedy. In the "Century of Law Reform" a most excellent collection of Twelve Lectures delivered at Lincoln's Inn by eminent lawyers, upon the present status of the law in England, it is said (p. 373) that "a wife may get an injunction restraining her husband from entering her house", and (p. 376) that a wife can take out criminal proceedings against her husband for stealing her propety.

In the present case the wife cannot have a divorce, though the husband is living in open adultery, because he has not *"abandoned her* and lived in adultery as our statute requires" (*House v. House,* 131 N. C,. 140) but for good cause, as the jury finds, she has left him. If therefore she can not forbid him to go upon her separate property and to live there in her absence, she has lost that absolute control of her property, as she had it before marriage and which a constitutional provision guarantees shall *remain* in her after marriage. If she can not forbid him to go there, she cannot ask a court to forbid his doing so and his character and conduct may, and doubtless would, prevent her getting a tenant for that tract of land. What self-respecting tenant would share the house with the husband and his paramour? Besides if he has a right to occupy the house at all as husband he has a right to the whole of it. But the Constitution forbids him any right of his wife's property. In *Manning v. Manning, supra,* it was held that

he had the right of ingress and egress, to the wife's presence, though not to any dominion over her land or occupancy of the house except in conjunction with her.

But even the right of access to her person, if contrary to her will, has since that decision been denied though there was no divorce, in the famous *Clitheroe* case (*Reg. v. Jackson,* Law Reports—Q. B. D., 1891—671) by a unanimous bench in the Court of Appeals in England Lord Chancellor Halsbury, Lord Esher, Master of Rolls, and Fry, L. J., delivering opinions. That case attracted the attention of lawyers throughout the world and has been generally accepted as settling the right of a married woman to be free as to her person, as well as her property, from the control of her husband, unless she is willing to his companionship. He can sue for divorce if his own conduct so entitles him.

As the wife cannot by *habeas corpus* compel the husband to abide with her, so it was held in the *Clitheroe* case that the husband could not enforce the unwilling companionship of the wife. The law now recognizes the equality of rights of both parties to the marital relation, and no longer asserts the inferiority or subjection of women. The question here involved is not the propriety of husband and wife living together, notwithstanding he is living in adultery with another woman. The husband and wife are not living together, and there is no process by which the courts can make her live with him. It is not an issue of divorce but of property rights. The sole question is can the husband infringe upon the wife's right to have the sole custody of her property which the Constitution has guaranted to her, or can the courts disregard that guarantee because man and wife ought to live together? Is there any higher law than the Constitution? Besides the husband occupying the wife's property in her absence and against her prohibition is not living with her, even constructively.

Certainly as the wife was not living on this property, the husband had no right to go there and occupy the house against the prohibition of the owner. He had no interest in the property. The wife has sole right to control it, and as fully as if she had remained single.

The judge should have sustained the action of the justice of the peace.