## Wytheville.

## De Baun's Executor v. De Baun and Others.

### June 8, 1916.

#### Absent, Cardwell, J.

1. Married Women—*Separate Estate—Legal—Equitable.*—Estates of married women which are made separate by operation of law are statutory separate estates; those which are made separate by the operation of the instrument or conveyance creating them are equitable separate estates.

2. Limitation of Actions—*Loan by Wife to Husband—Ability of Wife to Sue—Case in Judgment.*—Property acquired by a married woman under the New Jersey act of 1852, is her property, and her husband has no interest in it or control over it. She acquired both the legal and equitable title to it, and her husband is in no sense her trustee. Her property, so acquired, is protected in her hands as well against the claims of her husband as against strangers, and if he receives it, a court of equity will compel him to account for it. If after the wife thus received money in New Jersey, she and her husband removed to this State to reside in 1868, and the wife loaned the money to her husband and took his notes therefor, she acquired the legal title to the notes in lieu of the money, and the relation of the parties to the transaction became that of debtor and creditor, and she could at any time have enforced her demand by a suit in equity, or since March, 1900, by an action at law, and the statute of limitations applies as much to her claim as to that of any one else.

3. Husband and Wife—*Loan to Husband—Trust.*—Where a wife, having the legal title to money, loans it to her husband, the relationship of the parties to the transaction is that of creditor and debtor, and not that of *cestui que trust* and trustee.

4. Limitation of Actions—*Married Women—Saving Clause.*—The statute of limitations applies as well to married women as to other persons if no saving clause in their favor is contained in the statute.

5. Resulting Trust—*Loans Subsequent to Purchase of Land.*—Where a husband buys land and takes a deed for it, and subsequently borrows money from his wife and uses it for the purpose of retiring some of

the notes given for deferred payments on the land, although he in no way obligated himself so to use it, and could have disposed of it in any other way that he chose, no trust in the land results in favor of the wife.

Appeal from a decree of the Circuit Court of Norfolk county. Decree for the defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Jeffries & Jeffries* and *Jeffries, Wolcott, Wolcott & Lankford*, for the appellant.

*William McK. Woodhouse, R. H. Bagby, E. R. F. Wells* and *E. M. Baun*, for the appellees.

HARRISON, J., delivered the opinion of the court.

So far as this appeal is concerned, the object of this suit is to enforce payment by the estate of G. D. De Baun, deceased, of two notes executed by him to his wife, Elizabeth De Baun, one for $2,000, dated August 5, 1869, payable on demand, and the other for $250, dated February 4, 1870, payable six months after date. The sole question to be determined is whether the lower court erred in sustaining the plea of the statute of limitations filed by the executors of G. D. De Baun as a bar to any recovery upon the claim asserted.

It appears from the record that James Young, the father of Elizabeth De Baun, who lived in New Jersey, died in 1861, leaving a will by which he devised and bequeathed one-fourth of his estate to his daughter, Elizabeth, the wife of G. D. De Baun, and that in 1862 his executor paid to her, for her distributive

share in the estate, the sum of $2,061.93. It further appears that about the year 1868 Elizabeth De Baun and her husband moved from New Jersey to Norfolk county, Virginia, where they resided until they died. The evidence is conflicting as to the consideration of the notes in question. It may, however, be assumed for the purpose of this case that the notes represent the money derived by Mrs. De Baun from her father's estate.

It is contended by the appellant that the rights of Mrs. De Baun in the estate of her father were purely equitable and were enforceable only in equity, to which case no statute of limitation applies. This position is not sustained by the record. The distinction between equitable separate estates and statutory separate estates is clearly stated as follows:

"Estates of married women which are made separate by operation of law are statutory separate estates; those which are made separate by operation of the instrument or conveyance creating them are equitable separate estates." 25 Am. & Eng. Ency. L. (2nd ed.) 344.

In the will of Mrs. De Baun's father there were no apt words for creating in her an equitable separate estate, but by virtue of the New Jersey act of 1852, she took a statutory separate estate. Under this statute a married woman took the legal title to property conveyed or devised to her, and not simply the equitable title thereto. Not only is the statute sufficiently clear on this point, but the Supreme Court of that State has so construed it in several cases. *Vreeland* v. *Vreeland*, 16 N. J. Eq. 512, 514; *Porch* v. *Fries*, 18 N. J. Eq. 204, 208; *Armstrong* v. *Ross*, 20 N. J. Eq. 118.

In *Vreeland* v. *Vreeland, supra,* it is said: "It is clear that the intervention of no trustee is essential to protect the legal rights of the wife. That is the necessary result of the enabling act of 1852. Her property is protected in her own hands as well against the claim of the husband as against strangers. She may receive and hold property in her own name as if she were a *feme sole.*"

Under the provisions, therefore, of the New Jersey act of 1852, there was no occasion for Mrs. De Baun to have a trustee to hold the legal title to the money derived by her from her father's estate. She took the legal title herself, and her husband was in no sense her trustee. The act is silent as to her power of disposition of the statutory separate estate created thereby, but under the New Jersey law, and certainly under our Virginia law, which later on governed her actions, she could enter into contracts with reference to this statutory separate estate, which would be recognized and enforced by a court of equity.

In *Cole* v. *Lee* (N. J.), 18 Atl. 854, it was said to be "well settled that on proof that a husband has received his wife's money, a court of equity will compel him and his representatives to account to her at least for the principal received, and they can only discharge themselves by showing that the husband disposed of the money according to the wife's directions, or that it was a gift to him."

In *Burnett* v. *Hawpe*, 25 Gratt. (66 Va.) 481, 486, Judge Staples, in commenting on the wife's powers over her separate personal estate, says: "As an incident to this *jus disponendi*, a *feme covert* may charge the separate estate with the payment of her debts. She may charge it as principal or as surety for her own benefit or that of another. She may appropriate it

to the payment of her husband's debts.    She may even
give it to him if she pleases, no improper influences
being exerted over her. . . . And although the
separate estate is conveyed to a trustee, his assent is
not necessary to a valid alienation or charge by the
wife, unless it is required expressly or by strong impli-
cation in the instrument under which the property is
derived."

In the light of the authorities cited, it is clear that
when, in 1862, her father's executors paid to Mrs. De
Baun this statutory separate estate, she acquired both
the legal and equitable title to it.    Her husband had
no control over it and no rights in it.    And when in
1869 and 1870 she loaned him this money and took his
notes for its repayment, she had the legal title to the
notes in lieu of the money.    Small payments were
thereafter made to her and credited on the notes, and
she frequently made demand on her husband for the
principal and the interest.    There was no trust rela-
tionship between Mrs. De Baun and her husband of
any kind.    When she loaned this money to him, it
was his from that time on—not hers.    Both consid-
ered it as a loan, and their relation to the transaction
at once became that of debtor and creditor.    Her
claim against her husband was a legal one which, but
for the disability of coverture, she could have enforced
at law.    She could, however, at any time have brought
suit in equity and enforced payment if she had desired
to do so. · 1 Minor's Inst. p. 321.    In such a case the
court will apply the statute of limitations by analogy to
the rule which obtains in courts of law.    *Harshberger*
v. *Alger*, 31 Gratt. (72 Va.) 52, 67, where it is said:
"In demands strictly legal, of which equity has juris-
diction concurrent with the law courts, equity follows
the law literally in applying the statute of limitations,

acting according to what would seem to be the better opinion, in obedience to the requirements of the statute; while in cases of claims of an equitable nature, it acts by analogy; that is, it applies the same bar to such claims that would be applied at law, under the statute, to legal claims of analogous character."

The appellant advances as a further reason why the statute of limitations is inapplicable, that "A direct and express trust was created in him (the husband) against which the statute of limitations does not run."

In disposing of this proposition, which seems to be based upon a misconception of the facts as we understand them, we can only repeat that the evidence shows that no trust was established or intended to be established by the parties to the transaction under consideration. The cases cited by appellant are not applicable. They are cases where the husband had received from a third party money which belonged to his wife and, therefore, held it for her use and benefit. No such fact existed in the case at bar. Mrs. De Baun did not entrust her money to her husband. She loaned it to him and took his notes for the repayment of it. The relationship between them was, as already said, that of debtor and creditor, and not that of *cestui que trust* and trustee.

In the case *In re Deaner's Estate*, 126 Iowa 701, 102 N. W. 825, 106 Am. St. Rep. 374, it is said: "There is no ground for the suggestion that the money was retained by the husband as a trust fund. He is not shown to have agreed to hold it for her. On the contrary, he made use of it as his own, and in the notes promised to repay. It was merely a debt of his to his wife, and would only have been enforced as such."

And in the case of *Muns* v. *Muns*, 29 Minn. 115, 12 N. W. 343, an instructive case on this question, it is

said: "This is the case of a wife seeking by an action a recovery of money from her husband, which, unless the effect of the statute is avoided, is barred. It is incumbent upon her, as it would be upon any plaintiff, to lay before the court the facts, if any exist, which take her case out of the operation of the statute. She has not done so. Our statutes have confirmed the separate property of a married woman in her and freed it from the control of the husband. She is also made capable of contracting in respect thereto (with an exception as to real property), even with her husband, as if *sole*. A trust, in any technical or proper sense, is not necessarily created whenever the money of a married woman comes with her knowledge into the possession of the husband. The transaction may as well be a gift or a loan from her to him, and the intention of the parties, as between themselves, will determine whether the property still remains hers, or becomes that of the husband, either as donee or borrower."

The case of *Riggan* v. *Riggan*, 93 Va. 78, 24 S. E. 920, relied on by the appellant illustrates the distinction between the case of an equitable separate estate, where the husband was charged as trustee with the collection and investment of his wife's equitable separate estate, and the case of a statutory separate estate, to which she had the legal title. In the former case it was held that the statute of limitations did not run in favor of the husband, while in the latter case the statute was held to apply with full force against her claim upon her husband. The court said: "As to the two sums of $55.00 and $19.00, collected by Dr. Riggan on demands due his wife after the passage of the married woman's act of April 7, 1877, while these sums of money were under this act the separate estate of the wife, they were not at all involved under the trust upon

which Dr. Riggan held the funds collected from Dr. Sims for his wife's interest in the loan, and the circuit court was right in holding that the statute of limitations pleaded by Dr. Riggan's administrator barred their recovery."

The appellant further contends that the statute of limitations does not apply because, "Whatever was the character of her estate and her rights therein, her coverture prevented the statute from running in favor of her husband, whom she could not sue." This contention·has been sufficiently disposed of by what has been already said. The authorities show clearly that a married woman can and always could, sue her husband in a court of equity, and ever since the enactment of the present married woman's law—March, 1900—she could sue him in a court of law. This being so, the statute of limitations applies as much to her claim as that of any one else.

Mr. Burks, in his recent work on Pleading and Practice, says: "While statutes of limitation, as previously stated, generally contain a saving clause in favor of infants, married women and other persons laboring under disabilities, it is entirely competent for the legislature to omit such saving clause, and, when omitted, statutes of limitations apply to such persons as though no disability existed. In Virginia the statute of limitations makes no exception in favor of married women in respect to matters relating to, or effecting, their separate estates, nor as to the right to make entry on or to bring an action to recover land." Burks' Pl. & Pr., p. 394.

The appellant also assigns as error the refusal of the circuit court to hold that a resulting trust existed in favor of Elizabeth De Baun in the tract of land known as the Nicholson farm. It appears that the husband

had bought this farm and taken a deed for it some time prior to the time when he borrowed his wife's money, and that he used $2,000 of the money borrowed from his wife to retire some of his deferred purchase money notes. The requisites for raising a resulting trust do not exist in this case.

In *Harris* v. *Elliott*, 45 W. Va. 245, 249, 32 S. E. 176, 178, it is said: "Another reason against such resulting trust is that what money Jasper paid he paid after the deed to Creed; as it is a rule that the payment which is to raise a resulting trust must be made at the very instant the title is taken by the alleged trustee, no subsequent payment, or even oral agreement for such trust, will raise it."

In the case of *Donaghe, &c.* v. *Tams*, 81 Va. 132, 142, it is said: "The resulting trust not within the statute of frauds, and which may be shown without writing, is when the purchase is made with the proper moneys of the *cestui que trust*, and the deed not taken in his name. The trust results from the original transaction at the time it takes place, and at no other time, and it is founded on the actual payment of money, and on no other ground." 2 Johns. Chy. Rep. 415, quoted with approbation by Judge Bouldin in *Phelps* v. *Seeley*, 22 Gratt. (63 Va.) 573 and by Judge Christian in *Miller* v. *Blose's Ex'ors*, 30 Gratt. (71 Va.) 744.

In *McDevitt* v. *Frantz*, 85 Va. 922, 9 S. E. 282, it is held that where, under decree of court, money was loaned to a purchaser to pay part of the price of land, a trust would not result in favor of the owners of such money.

In *Levey* v. *Williams*, 20 Tex. Civ. App. 651, 50 S. W. 528, it was held that, "a trust would not result from a purchase of land by a husband with money borrowed from his wife, so as to give her an equitable lien on the lands."

Further citation of authority on this subject is unnecessary. In the case at bar the most that can be said is that the husband, some time after he had bought the farm and taken a deed therefor, borrowed this money from his wife and used it for the purpose of retiring some of the deferred purchase money due thereon from him. He did not obligate himself to use it for that purpose and could have disposed of it in any other way that he chose. The notes that are here sought to be enforced against the estate of a dead man have been due for more than forty-five years, and at any time during that period the wife could have brought suit against her husband for their enforcement in equity, and ever since March, 1900, she could have instituted an action at law against him.

We are of opinion that the lower court did not err in holding that the notes were long since barred by the statute of limitations, and its decree must be affirmed.

*Affirmed.*