# Richmond.

## Maurice L. Edmonds v. Bessie C. Edmonds.

### September 25, 1924.

1. Separate Property of Married Women—*Common Law Rule—Effect of Virginia Married Women's Act.*—At common law the wife's property was under the absolute management and control of the husband. But in practically all the States, in various degrees, the common law rule has been modified and in some entirely abrogated. The Virginia statute (section 5134 of the Code of 1919), has gone as far as the statute of any other State with respect to the rights of married women. Indeed, it has now wiped aside every vestige of control the husband ever had under the common law, and all his rights as husband except as to curtesy.

2. Separate Property of Married Women—*Married Women's Act—Effect.*—The effect of the Virginia married women's act (section 5134 of the Code of 1919) is to give the wife as full control over her property during the coverture as her husband has over his. She may sue her husband as if he were a stranger. A husband in Virginia may be a trespasser upon his wife's lands whenever she is not occupying them, if he goes there against her will or her commands; she may prosecute him for criminal trespass; she may dispossess him if he is in possession; or may hold him to account in connection with any transaction with reference to her lands as if he were a stranger. His right to curtesy and his marital rights give him no more power or authority over his wife's property than if he were a total stranger.

3. Husband and Wife—*Husband's Right of Access Gives no Right of Control over Wife's Property.*—If a husband has a right to go upon the wife's premises and jointly occupy them with her, it is solely by virtue of the fact that he has a right of access to her because of his marital rights. He expressly has none to her *property* because of his marital rights. If she is not on the premises, his right of occupancy, his right of ingress and egress, would seem to cease, if she withholds her consent to his going there. His right of ingress and egress would be to and from her, wherever she might be.

4. Husband and Wife—*Husband's Right of Access Gives no Right of Control over Wife's Property.*—It is difficult to see how a husband under the Virginia statute (section 5134 of the Code of 1919) can have any right of occupancy of the wife's real estate unless she resides

upon it, and he gets the right of joint occupancy with her then, not because he has any interest in her land, or control over it, or the right to use it, but because as her husband he has the right to the enjoyment of her society. The husband's rights so far as the wife's property is concerned are determined by that statute and his occupancy or use or control thereof are not only not provided for thereby but they are expressly provided against.

5. HUSBAND AND WIFE—*Separate Property of Married Women—Desertion by Wife—Husband's Rights.*—On grounds of public policy the inference could very well be drawn in cases where the wife's property had been set aside as a joint or family home with her consent, that she could not desert it without cause, and then, taking advantage of her own wrong, turn her husband out. But the legislature of Virginia, assisted by the Code revisors (Code of 1919, section 5134), left no room for any inferences where our statute is concerned. There is no room for construction. She is given the right to "acquire, hold, use, control, and dispose of her property as if she were unmarried." Therefore, a husband has no right of possession, use or occupancy of his wife's real estate as a home or in any other way, unless she is also occupying it.

6. REAL PROPERTY—*Ownership—Right to Dispossess Another—Case at Bar.*—One of the incidents of ownership of land is the power to dispossess any one who is wrongfully in possession or occupancy of it, or who is in possession of it without the authority of the owner. In the instant case, if the parties were not husband and wife, there could be no question as to the right of the plaintiff, a wife who had left her husband, to dispossess the defendant, her husband, from the premises in question, the property of the wife upon which the husband was still living, nor can the Virginia married women's act be construed as giving the husband any rights that a stranger does not possess.

7. HUSBAND AND WIFE—*Separate Property of Married Women—Control of Husband over Married Woman's Property—House Built by Husband on Wife's Property—Case at Bar.*—A husband built a house upon his wife's property as a home for himself and her. The wife deserted the husband and instituted an action of unlawful detainer against him to recover possession of the room in the house which he occupied. The deed by which the wife holds title is unconditional, and conveys a fee simple estate to the wife, and the fact that he was the husband and built upon his wife's land a home for both would give him no right simply because he was the husband. Nor would the bare fact that he paid for the improvements upon the wife's real estate give the husband the right to occupy it against her will and without her consent.

8. TRUSTS AND TRUSTEES—*Resulting Trust—Husband and Wife—Case at*

*Bar.*—While it is true that when the title to land is taken by one person, and the purchase price is paid by another, there is, as a general rule, a resulting trust in favor of the latter, that doctrine has no application where a husband purchases land, and pays for it, but puts the title in his wife. In that case the wife holds the land as a gift, and not in trust. And in the instant case there was nothing to rebut this presumption; no evidence to indicate that a trust was established in favor of the husband, and even if there was, under the circumstances, it would be a matter of equity jurisdiction.

9. HUSBAND AND WIFE—*Separate Property of Married Women—Desertion of Wife—Husband's Right to Occupy the Home.*—The desertion by the wife of her home and husband gives the husband no right to occupy the home when it is the property of the wife. His rights are determined by the married women's act, and it is immaterial under that act whether their relations are friendly or unfriendly, whether they are living together or apart, or whether they are separated with good cause or no cause at all.

10. HUSBAND AND WIFE—*Desertion of Wife—Husband's Right to Occupy the Home which was the Property of Wife—Parol Agreement for Interest in Land—Case at Bar.*—In the instant case, an action of unlawful detainer by a wife against her husband to recover possession of a room in the house which they had occupied when living together, the husband alleged an agreement between him and his wife under which he was to be permitted to occupy or live in the home in question.

*Held:* That the husband's testimony as to the agreement was too vague, uncertain and indefinite to give the husband what would virtually amount to a life estate by parol agreement in his wife's realty.

Error to a judgment of Corporation Court No. 2, of the city of Norfolk, in an action of unlawful detainer. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Jas. G. Martin & Bro.*, for the plaintiff in error.

*E. R. F. Wells* and *John Vaughan Groner*, for the dedendant in error.

CHICHESTER, J., delivered the opinion of the court.

The facts in this case present a novel proposition in Virginia jurisprudence. They are undisputed so far as they are material to a decision of this controversy.

Maurice L. Edmonds and Bessie C. Edmonds were married many years ago. They are still husband and wife, never having been divorced. The wife is the owner, by gift from her husband, of a certain lot of ground in Norfolk city upon which the husband erected a two-apartment house, one apartment being built for a home for the occupancy of both. This apartment was occupied as a home by the husband, the wife and their son, their only child, for over nine years. In September, 1922, the wife deserted her home and her husband, taking their infant child with her. She has declared her intention never to return to the husband or to permit her husband to live with her. The husband is willing and anxious for his wife to return to him and the home they occupied together. In November, 1922, Mrs. Edmonds instituted an action of unlawful detainer against her husband to recover possession of the one room in the apartment which he occupies. She has legal possession of the remaining apartment and collects the rents. Upon the trial of the case there was a verdict for the plaintiff and judgment was entered thereon by the court. Upon the trial court's refusal to set the verdict aside as contrary to the law and the evidence and without evidence to support it, the husband applied for and obtained a writ of error from one of the judges of the Supreme Court of Appeals.

The following errors are assigned in the petition for a. writ of error:

1. The court erred in not setting aside the verdict as. contrary to the law and the evidence and as without evidence to support it; and in not sustaining the motion of defendant to set aside the verdict on these grounds.

2. The court erred in granting the instruction asked by the plaintiff.

3. The court erred in refusing the instruction asked by the defendant.

4. The court erred in refusing to permit defendant to prove positively that when plaintiff deserted him and the home, in September, 1922, she did so without any cause or excuse.

5. The court erred in striking out all the evidence on behalf of defendant as to the agreement between him and his wife, as to the defendant's being permitted to occupy or live in the apartment house in question.

It is not necessary to take up in their order the various assignments of error. The facts of the case and the questions presented at the trial involve a discussion of a husband's rights in his wife's realty, conveyed to her absolutely and without condition, under the circumstances above set out, in which the defenses to the wife's rights to recover possession thereof were: First, that the husband's marital rights preclude a recovery under the circumstances; second, that the husband erected the dwelling house for himself and his wife as a home, on the wife's land; third, that the wife deserted the home without cause or excuse; and, fourth, an alleged contract under the terms of which the husband claimed the right to occupy the home in question for his. life time, as set out in the fifth assignment of error,. *supra.*

[1] The first defense involves construction of section
5134 of the Code, 1919, the first section of what is ·
known as the married woman's act.   At common law
the wife's property was under the absolute manage-
ment and control of the husband.   But in practically
all the States, in varying degrees, the common law rule
has been modified and in some entirely abrogated.   The
Virginia statute, section 5134, Code 1919, as Judge
Cardwell said, in effect, in *Moreland* v. *Moreland,* 108
Va. 93, 60 S. E. 730, has gone as far as the statute of any
other State with respect to the rights of married women.
Indeed, it has now wiped aside every vestige of control
the husband ever had under the common law, and all
his rights as husband except as to curtesy.   It declares:

"A married woman shall have the right to acquire,
hold, use, control, and dispose of property, as if she
were unmarried, and such power of use, control, and
disposition shall apply to all property of a married
woman which has been acquired by her since April
fourth, eighteen hundred and seventy-seven, or shall
be hereafter acquired; provided, however, that her hus-
band shall be entitled to curtesy in her real estate other
than her equitable separate estate when the common
law requisites therefor exist, and he shall not be de-
prived thereof by her sole act; but neither his right to
curtesy nor his marital rights shall entitle him to the
possession or use, or to the rents, issues, and profits of
said real estate during the coverture; nor shall the prop-
erty of the wife be subject to the debts or liabilities of
the husband.   A married woman may contract and be.
contracted with, sue and be sued, in the same manner·
and with the same consequences as if she were unmar-
ried, whether the right or liability asserted by or against
her shall have accrued heretofore or hereafter," * * *
etc.

[2] The effect of this statute is to give the wife as full control over her property during the coverture, as her husband has over his. She may sue her husband as if he were a stranger. *Pamill* v. *Coles*, 81 Va. 380; *Moreland* v. *Moreland, supra; DeBaum* v. *DeBaum*, 119 Va. 85, 89 S. E. 239; *Alexander* v. *Alexander*, 85 Va. 353, 7 S. E. 335, 1 L. R. A. 125. The revisors of the Code, 1919, when they came to deal with section 5134, in order that there might, thereafter, be no doubt of the total abolition of the husband's common law rights, added immediately after "but neither his right to curtesy," the following significant words, "nor his marital rights," to language which of itself seemed to have eliminated the husband's previous rights. The language "nor his marital rights" would seem but to emphasize and clarify, to make certain, the first few lines of the act: "A married woman shall have the right to acquire, hold, use, control, and dispose of property *as if she were unmarried*," etc. It follows that a husband in Virginia may be a trespasser upon his wife's lands whenever she is not occupying them, if he goes there against her will or her commands; that she may prosecute him for criminal trespass; that she may dispossess him if he is in possession; or may hold him to account in connection with any transaction with reference to her lands, as if he were a stranger. His right to curtesy and his marital rights give him no more power or authority over his wife's property than if he were a total stranger.

Cases similar to the instant case have arisen in other jurisdictions and the decisions of the courts in the different States have not been uniform. Neither are the statutes uniform. There are two lines of decisions. Neither has questioned the right of the wife to control her own property where there were statutes similar, or nearly similar, to our statute, but on grounds of public

policy it seems, where the wife's real estate had been occupied jointly by the husband and wife as a home, and where there is no express provision in the statute excluding the husband from all rights as such, one line of authorities has accorded the husband the right to occupy the premises not only with the wife, although against her will, but also even if the wife deserts the home and her husband without cause. The leading case representing this line of authorities is *Manning* v. *Manning*, 79 N. C. 293, 28 Am. Rep. 324. In this case the wife was residing on the premises at the time she brought action against her husband for possession of the premises. The court gave the wife possession but stated that while the husband was without authority to in anywise control the property, he had the right of oc-·cupancy with the wife.

A later case, *State* v. *Jones*, 132 N. C. 1043, 43 S. E. 939, 61 L. R. A. 777, 95 Am. St. Rep. 688, accorded the husband the right of occupancy where the wife had deserted her home and husband without cause.

[3, 4] The Constitution of North Carolina, article 10, paragraph 6, provides that the property of any female, whether acquired before or after marriage, "shall be and remain the sole and separate property of such female." This language is not as broad or as comprehensive as that used in our statute. The right to acquire, etc., property as if she were unmarried would seem to exclude every possible or conceivable right the husband could have except curtesy, and it is fully as far reaching as the language used in the North Carolina Constitution, without that above referred to, added by the revisors. Nothing is expressly said here of the right of possession or use by the husband, however much it would seem to follow that he has no such right. But our statute carries no such doubt, certainly since the

revision of the Code. The husband expressly has no such right because of his relation as husband. This makes the husband a stranger to his wife, so far as it seems possible for language to make him, as to her property. If he has a right to go upon her premises and jointly occupy them *with* her, it is solely by virtue of the fact that he has a right of access to *her* because of his marital rights. He expressly has none to her *property* because of his marital rights. If she is not on the premises his right of occupancy, his right of ingress and egress, would seem to cease, if she withholds her consent to his going there. His right of ingress and egress would be to and from her, wherever she might be. It is difficult, therefore, to see how the husband, under our statute, can have any right of occupancy of the wife's real estate unless she resides upon it, and he gets the right of joint occupancy with her then, not because he has any interest in her land, or control over it, or the right to use it, but because as her husband he has the right to the enjoyment of her society. The husband's rights, so far as the wife's property is concerned, are determined by our statute, *supra*, and his occupancy, or use, or control thereof are not only not provided for thereby, but they are expressly provided against.

[5] In the most of the statutes there is nothing said about marital rights. They are content, for the most part, to give the wife the right to acquire property and to own it as her sole and separate estate. On grounds of public policy, the inference could very well be drawn, in cases where the wife's property had been set aside as a joint or family home with her consent, that she could not desert it without cause and then, taking advantage of her own wrong, turn her husband out. But the legislature of Virginia, assisted by the Code revisors, left no room for any inferences where our statute is

concerned. There is no room for construction. She is given the right to "acquire, hold, use, control and dispose of her property as if she were unmarried." That alone would seem to end it, but it wasn't enough; "but neither his right to curtesy nor his *marital rights* shall entitle him to the *possession,* or *use,* of said real estate during the coverture." It is needless to say there are no decided cases which, in the teeth of a statute such as this, give a husband any right of possession, use, or occupancy of his wife's real estate as a home or in any other way, unless she is also occupying it. It was very well said by McDowell, J., in *King* v. *Davis* (C. C.), 137 Fed. 222 (a Virginia case), that the husband occupies the relationship of a guest upon his wife's premises.

From the foregoing it is evident why the decisions of courts have not been uniform and why they are not particularly helpful in arriving at a conclusion in the instant case. In the second line of decisions referred to, no inferences are drawn in the interest of "marital rights."

In a leading case, *Cook* v. *Cook,* 125 Ala. 583, 27 So. 918, 82 Am. St. Rep. 264, in which the facts were similar to the instant case, and in construing a statute similar to ours but not so direct or emphatic, McClelland, C. J., said:

"Nor is it of consequence that the land of which recovery is sought was at one time occupied by the husband and wife with their children as a homestead, nor, that the husband and children still reside thereon, nor that he at the time of trial, or at all times, was willing for the wife to return to the homestead and occupy it jointly with him. He has no right to compel her to let him into joint possession or occupation of any of her land, nor any right to exclude her from the possession and occupation altogether, unless she assents to joint

possession and occupation with him.   There is no law to compel a wife to live with her husband on her land or on his.   There is no legal prohibition upon her separating from him and living apart.   And having separated from him and left her home in his possession, she is entitled to recover it from him as if he were a stranger. To hold otherwise would be to give the husband rights and estates in the wife's lands which our statutes not only do not provide for, but expressly provide against."

To the same effect are *Crater* v. *Crater*, 118 Ind. 521, 21 N. E. 290, 10 Am. St. Rep. 161; *Buckingham* v. *Buckingham*, 81 Mich. 89, 45 N. W. 504; *McDuff* v. *McDuff*, 45 Cal. App. 53, 187 Pac. 37.   See also (note) 21 Am. Rep. 749; 30 Corpus Juris, 954.

[6] One of the incidents of ownership of land is the power to dispossess any one who is wrongfully in possession or occupancy of it, or who is in possession of it without the authority of the owner.   So, in the instant case, if the parties here were not husband and wife there could be no question as to the right of the defendant in error to dispossess the plaintiff in error.   Can our statute be construed as giving the husband any rights that a stranger does not possess?   Does it not expressly put the husband on exactly the same footing as a stranger so far as her estate is concerned?   In *Minier* v. *Minier*, 4 Lans. (N. Y.), 421, it is said:   "In regard to property, the relation of husband and wife does not affect it; as to it the parties are strangers to each other."

Another incident of the ownership of property is the right to dispose of it, to sell it.   The Virginia statute expressly gives a married woman the right to dispose of her estate, and this she can do whether the husband joins in the conveyance or not.   She cannot bar his curtesy, it is true, but during the lifetime of the wife the husband will be dispossessed.   This being true, it

would seem to follow that she could dispossess him by virtue of her right and title. If dispossession can be effected indirectly it would seem to follow that it can be effected directly. From the foregoing it is clear that in Virginia a husband has neither the right of control, possession, use, or occupancy of his wife's realty without her consent or against her will, and that as to her property he is a stranger during her lifetime. The trial court therefore was right in refusing to consider the marital relation in instructing the jury or in passing upon the motion to set aside the verdict as contrary to the law and the evidence. It could have been rejected as a ground of defense to the action as a matter of law.

[7, 8] The second ground of defense, to-wit, that the husband built the house upon his wife's property as a home for himself and her, cannot avail to prevent recovery. The deed by which she holds title is unconditional and conveys a fee simple estate to the wife, and the fact that he was the husband and built upon his wife's land a home for both, would give him no right simply because he was the husband, as we have seen. Nor would the bare fact that he paid for the improvements upon the wife's real estate give the husband the right to occupy it against her will and without her consent. By the almost unanimous weight of authority such improvements are held to attach to the freehold as a gift. *Arrington* v. *Arrington*, 114 N. C. 116, 19 S. E. 278; *Kearney* v. *Vann*, 154 N. C. 311, 70 S. E. 747, Ann. Cas. 1912-A, 1189; *Vickers* v. *Vickers*, 133 Ga. 383, 65 S. E. 885, 24 L. R. A. (N. S.) 1043; *Selover* v. *Selover*, 62 N. J. Eq. 761, 48 Atl. 522, 90 Am. St. Rep. 478. See also Corpus Juris, p. 702, paragraph 298-3, note 30, and cases there cited. In *Arrington* v. *Arrington*, the court said:

"It was also properly held that there was nothing

whatever to support the contention of the defendant that the plaintiff and her heirs had been invested with the title to the land in dispute, to hold it in trust for the defendant and his heirs, or for the plaintiff and defendant jointly; for, while it is true that when the title to land is taken to one person, and the purchase price is paid by another, there is as a general rule, a resulting trust in favor of the latter, that doctrine has no application where, as here, a husband purchases land and pays for it but puts the title in his wife. In such cases the wife holds the land as a gift, and not in trust. This is presumed from the relation of the parties."

See also note to *Neil* v. *Keese,* 51 Am. Dec. page 571, as to resulting trusts.

There is nothing to rebut this presumption in the instant case; no evidence to indicate that a trust was established in favor of the husband. But even if there was, under the circumstances, it would be a matter of equity jurisdiction. It is apparent from the foregoing that this second ground of defense should avail the husband nothing against the claim of his wife.

[9] As to third ground of defense, it is difficult to see how desertion by the wife of her home and husband gives the husband the right to occupy the wife's lands. If he gets such a right it would be because he is her husband (and an injured husband, if you please), because of his marital rights, and these, we have seen, under our statute, give him no right at all. His rights are determined by the statute and not by the fact as to whether the relations between husband and wife are friendly or unfriendly, whether they are living together or apart, or whether they separated for good cause or no cause at all. The trial court excluded evidence as to the cause of desertion, and it is apparent that it did not err in so doing.

[10] The fourth and last defense to the wife's right of
recovery of possession of her property is as to the evi-
dence of the alleged contract set out in the fifth assign-
ment of error, *supra.* The learned judge of the trial
court first admitted the evidence referred to, and later
excluded it, because even if it had been admitted as in-
troduced, it failed to establish a legal contract. The only
testimony as to this alleged contract is that of the hus-
band. His examination upon this phase of the case is
quite lengthy, and, although he was asked many lead-
ing questions as to the alleged agreement and pressed
to tell what it was time and again, the following is the
best he ever made of it:

"Q. What was the agreement?

"A. The agreement was to have the house in her
name. I would have one-third, I thought, and she
thought so too. I would have one-third interest in the
property for the rest of my life, and in case of my death
it was to go to her, and in case of her's it was to come
to me. We had no child then.

"Q. What was the agreement as to your occupying it?

"A. We were to live there for the rest of our lives;
that is what we intended.

"Q. Was or was not that agreed to?

"A. Yes, sir.

"Q. State whether or not, pursuant to that agree-
ment, you moved into the house.

"A. Yes, sir; we moved in. This is the tenth year.
We lived there just like children up to three or four
years ago."

This is clearly insufficient to constitute a contract.
It was for the court to say whether or not it amounted
to a contract. It could not be left to the jury. The
court accepting the defendant's testimony as true,
rightly decided that there was no contract and struck

out the testimony.   It is not sufficiently definite or certain as to its terms.   "I thought," and "she thought, too," and "that is what we intended," are expressions too vague and uncertain and definite to give the husband what virtually would amount to a life estate by parol agreement in his wife's realty.   The plaintiff in error no doubt thought all these things and intended all these things, and it is probable at the time he thought his wife intended them also.   He should have reduced his thoughts and intentions to a definite contract while he had the power to do so.   He appears here now without legal rights and without having established any equity which can avail him anything, except sympathy.

It is not necessary to pass on the action of the trial court in granting the instruction asked for by the plaintiff and in refusing the instruction asked for by the defendant, further than to say that the purport of the former was that the jury should, under the facts of the case, find for the plaintiff, which was, in truth, the only verdict they could properly find.   The latter was properly refused because its purport was to give the jury the prerogative of passing upon what was a matter of law.

From all the foregoing it clearly appears that theory upon which the trial court conducted the trial of this case was plainly right; that, as a matter of law, upon the facts, the plaintiff was entitled to recover possession of her premises; and that the judgment of the trial court should be affirmed.

*Affirmed.*