## Staunton

VIGILANT INSURANCE COMPANY, A CORPORATION v. SARAH LELAND
BENNETT.

September 14, 1955.

Record No. 4395.

Present, All the Justices.

The opinion states the case.

*Louis B. Fine* and *Jerrold G. Weinberg*, for the plaintiff in error.

*Preston P. Taylor*, for the defendant in error.

MILLER, J., delivered the opinion of the court.

An automobile owned by Herbert B. Bennett, and insured by
Vigilant Insurance Company against damage from fire was burned
by Sarah Leland Bennett, the insured's wife.

The company paid the sum of $902 to Bennett for destruction of

his car, and as subrogee under the insurance policy, instituted action in tort against insured's wife for the sum paid.

It was conceded that the company was subrogated to the rights, if any, that Bennett had against his wife, but upon her motion to dismiss, the court concluded that as she was insured's wife, this action could not be maintained. From a final order putting that decision into effect, the company appealed.

The only question to be decided is: Can a husband sue his wife in tort for her damage or destruction, during coverture, of his personal property?

At common law neither spouse could sue the other. This incapacity was basically due to the fictional legal unity and oneness brought about by their marriage. 41 C. J. S., Husband and Wife, §§ 393 and 396, pp. 867, 877; 27 Am. Jur., Husband and Wife, § 584, p. 183, *et seq.*; 1 Chitty's Blackstone, ch. 15, p. 343; *Alexander* v. *Alexander*, 85 Va. 353, 366, 7 S. E. 335.

The insurance company, however, contends that by §§ 55-35, 55-36, and 55-37, Code of 1950,[1] the common law fictional unity and resultant disability have been removed, and under those sections, the right now exists in either spouse to maintain an action in tort against the other for wrongful damage or destruction of his or her property.

This contention requires that the reasons underlying the disability of spouses to sue each other at common law be kept in mind and

[1] § 55-35. A married woman shall have the right to acquire, hold, use, control and dispose of property as if she were unmarried and such power of use, control and disposition shall apply to all property of a married woman which has been acquired by her since April fourth, eighteen hundred and seventy-seven, or shall be hereafter acquired. Her husband shall be entitled to curtesy in her real estate other than her equitable separate estate when the requisites therefor exist and he shall not be deprived thereof by her sole act. But neither her husband's right to curtesy nor his marital rights shall entitle him to the possession or use, or to the rents, issues and profits, of such real estate during the coverture; nor shall the property of the wife be subject to the debts or liabilities of the husband.

§ 55-36. A married woman may contract and be contracted with and sue and be sued in the same manner and with the same consequences as if she were unmarried, whether the right or liability asserted by or against her shall have accrued heretofore or hereafter. In an action by a married woman to recover for a personal injury inflicted on her she may recover the entire damage sustained including the personal injury and expenses arising out of the injury, whether chargeable to her or her husband, notwithstanding the husband may be entitled to the benefit of her services about domestic affairs and consortium; and no action for such injury, expenses or loss of services or consortium shall be maintained by the husband.

§ 55-37. A husband shall not be responsible for any contract, liability or tort of his wife, whether the contract or liability was incurred or the tort was committed before or after marriage.

the history and development of these Code sections traced before we attempt to apply them to the simple facts of this case. In doing this, the disabling effect that the unity of husband and wife had upon her personal and property rights at common law, with its resulting effect upon his rights and liabilities with relation to her, must be briefly stated and appraised.

At common law a wife could not bring a tort action against her husband because by the marriage (a) her identity was merged with her husband's, (b) she was rendered *non sui juris,* and (c) damages for a tortious wrong committed against her constituted a chose in action which the husband was entitled to reduce to possession during coverture. *Norfolk & Western R. Co.* v. *Prindle,* 82 Va. 122, 128; Burks' *Separate Estates,* ch. 1, pp. 6, 7.

The husband could not sue his wife for a tort because by the marriage (a) her identity was merged with his, (b) she was rendered *non sui juris,* and (c) he was liable for her torts. 41 C. J. S., Husband and Wife, § 219, p. 711. If he sued her, he would also sue himself.

Upon marriage the husband acquired full ownership of all the wife's tangible personal property, the right to reduce her choses in action to possession during coverture, and the right to the rents, issues and profits from her real estate, as well as her earnings. Owning and being entitled to her property and resources during coverture, it was only just that he be required to respond to her tort creditors.

Sections 55-35 and 55-36 are parts of what was originally called the Married Woman's Act, Acts 1876-77, ch. 329, p. 333, as amended by Acts 1877, ch. 265, p. 247. These acts and similar acts passed in other states were designed to enlarge the personal rights of married women and secure to them separate legal estates over which they were granted greater dominion and control than they had formerly enjoyed.

Upon codification of the general laws in 1887, the Married Woman's Act was revised and amended, and married women were further emancipated and their property rights broadened. The act appears in the Code of 1887 as chapter 103. By § 2284 of that chapter, in designating what constituted the separate estate of a married woman, after enumerating certain properties, it was expressly provided that her "separate estate shall include rights in action, damages for a wrong, and compensation for property taken

for public use * * *." But this declaration that "rights in action, damages for a wrong, and compensation for property taken * * *" should be included in her separate estate was qualified and the inferences that might be drawn therefrom limited by the further statement that "Nothing however in this or any other section of this chapter shall be construed as giving to a married woman a right to damages or a right of action therefor *against her husband for any injury to her person or reputation* committed by him before their marriage or during the coverture." (Emphasis added.) This provision forbade the wife from suing her husband for a purely personal tort and negatived the inference that might have arisen that she could do so.

By § 2288, Code of 1887, it was provided that as to all matters connected with, relating to or affecting the wife's trade, business or separate estate, she could sue and be sued "as if she were unmarried."

In *Norfolk & Western R. Co.* v. *Dougherty* (1895), 92 Va. 372, 374, 23 S. E. 777, where a married woman sought to recover for personal injuries and property damage, when discussing and determining her rights under chapter 103, Code of 1887, and especially in construing § 2288, Judge Harrison said:

"Under chapter 103 of the Code, all the disabilities imposed upon a married woman by the common law, so far as they affect the separate estate created by that chapter, have been removed, and she stands before the world, as to that separate estate, absolutely free to assert all rights touching it, and to invoke all remedies relating to the same, as though she had never married. These privileges she now enjoys like all other single individuals, restrained alone by the same laws that determine the rights of man, and when she exercises her privilege, and invokes the law's aid in asserting her rights, she must conform to the same rules of pleading and practice by which man is governed when he sues.

"Section 2288 of the Code clearly provides that, *as to matters connected with, relating to, or affecting the separate estate of a married woman, she may sue and be sued in the same manner, and there shall be the same remedies in respect thereof, for and against her and her said estate, as if she were unmarried.*"

Section 2290, Code of 1887, relieved the husband of all liability, contractual or tortious, incurred by his wife prior to their marriage and from all liability connected with or relating to her trade, busi-

ness or separate estate that occurred during coverture. Yet he was not relieved of liability for her post nuptial torts which were committed other than in connection with her trade, business or separate estate.

He was still jointly liable with her for such a tort, and if committed against him, any suit by him for the tort would necessarily have to be brought against himself as well as against his wife. Burks' *Separate Estates*, ch. 4, p. 83. For an analytical discussion of the Married Woman's Act as it appeared in the Code of 1887, see an article by William Minor Lile, later dean of the University of Virginia Law School, in 4 Virginia Law Register (1898) 413.

With the statutory rights and liabilities of spouses toward each other for tortious wrongs in this unsatisfactory and anomolous condition, the Legislature in 1900 materially changed and recast chapter 103, Code of 1887. Acts 1899-1900, ch. 1139, p. 1240. In this re-enactment it removed every vestige of the husband's liability as such for his wife's torts and rendered her solely liable for all of her tortious acts. That was accomplished by the following unequivocal declaration:

"3. A husband shall not be responsible for any contract, liability, or tort of his wife, whether the contract or liability was incurred or the tort was committed before or after the marriage." Now § 55-37, Code of 1950.

This recast of chapter 103 abolished separate estates as such and further enlarged married women's rights by giving them full ownership of and absolute dominion over their property. Having given a married woman full ownership of and control over her property, § 2284 which declared what made up her separate estate, in which were included rights of action and damages for a wrong, was no longer needed, and that section was repealed.

In repealing § 2284, Code of 1887, the provision "Nothing, however, in this or any other section of this chapter shall be construed as giving to a married woman a right to damages or a right of action therefor against her husband for any injury to her person or reputation * * *," was omitted from the new act.

The omission of that last clause did not, however, indicate that a wife should thereafter be allowed to maintain an action for a personal tort against her husband. For upon repeal of the provision which had included "rights in action" and "damages for a wrong" in a wife's separate estate, the need of the latter express

provision declaring that she was not given "a right to damages or a right of action" against her husband for a personal tort (which was meant to rebut the inference that she could sue him for such a tort that might have arisen from the preceding language) was no longer needed.

In *Keister's Adm'r v. Keister's Ex'ors*, 123 Va. 157, 174, 96 S. E. 315, in commenting upon the omission of the provision forbidding a wife to maintain an action against her husband for a purely personal tort, it is said:

"Secondly, section 2284 of the Code of 1887 expressly conferred substantive rights upon married women and when it expressly stated that the separate estate of a married woman '* * * shall include rights in action, damages for a wrong * * * to which she becomes entitled during coverture,' it was necessary for the legislature to include in that section such an express provision as that above quoted, negativing the intention to include the right of a married woman 'to damages or a right of action therefore against her husband * * *' etc., in order to prevent such a right being given by construction of such statute, contrary to the legislative intention. In view of the wholly different phraseology of the subsequent statute * * *, however, which did not include expressly or impliedly, 'rights in action, damages for a wrong * * * to which she becomes entitled during coverture' among the substantive rights conferred by the statute on married women, it was manifestly unnecessary for the negative provision aforesaid to be included * * *. This consideration is amply sufficient to account for the omission of such negative provision in the latter statute."

Acts 1899-1900, ch. 1139, p. 1240 (§ 5134, Code of 1919), construed and applied in *Keister's Adm'r v. Keister's Ex'ors, supra*, in 1918 was amended by Acts 1932, ch. 25, p. 21, but that amendment is not material to the question at hand. In the *Keister* case it was determined that an action for wrongful killing of the wife by her husband during coverture could not be maintained by the wife's personal representative. This conclusion was primarily based upon the fact that at common law the wife's legal existence and entity were merged with her husband's. The court also found that the enabling legislation had failed to bestow upon the wife that separate and distinct legal personality or entity necessary to create a substantive right of action in her against her husband for personal injury. Her remedy to sue had been sufficiently given by the language

which permitted her to "sue and be sued" but the statute had failed to bestow upon her a substantive civil right of a legal personality separate from her husband upon which he could inflict a purely personal tort. In that case it is said:

"The substantive civil right in question is a legal existence—a legal personality—of a married woman, separate and apart from the legal personality of her husband, during coverture. Such a right a married woman had not and has not at common law. (page 161)

\* \* \* \* \* \* \*

"If the legislature had intended to confer upon married women the substantive civil right of a legal existence and legal personality separate and apart from that of the husband, during coverture, nothing was easier than for it to have said so in language of no uncertain meaning." (page 163)

These findings and conclusions have been recently reaffirmed and applied in *Furey* v. *Furey*, 193 Va. 727, 71 S. E. (2d) 191, where a tort was committed by a man against a woman before their marriage and for which recovery was sought to be had by the woman against him after they intermarried. There, in adhering to the decision in the *Keister* case, Justice Buchanan said:

"If nothing can be found in our statute to change the common law rule that a wife cannot sue a husband for a tort committed during coverture, as held in the *Keister Case*, a search of the statute in the light of the principles followed in that case likewise reveals no purpose to change the common law so as to permit a suit by the wife against the husband for a tort committed before marriage. The reason for the conclusion in the second instance is no less compelling than in the first. We have found no case allowing a suit for antenuptial torts in the jurisdictions which have held that their married women's acts have not changed the common law rule against suits for torts committed during coverture. All that have dealt with the question, so far as our search reveals, have held against such right." (page 730)

Both of these cases were actions for torts against the person brought by the wife, or her personal representatives, *against the husband* or his personal representative. Yet upon consideration of the change in the common law status of husbands and wives wrought by legislation and the historical development of marital

rights and liabilities, upon principles of simple justice and public policy, it is plain that no similar action could be maintained by the husband against the wife.

However, the fact that no action for a purely personal tort committed by one spouse against or upon the other, such as personal injury, defamation of character or false imprisonment may be maintained is not determinative of their right to maintain actions for tortious acts and damages to each other's property.

The broad and enabling language of § 55-36, which provides that the wife may "sue and be sued in the same manner and with the same consequences as if she were unmarried * * *" has rendered the wife *sui juris*. The remedy, as distinguished from the substantive right of action, for a wrong committed by her or against her or her property is by that language made full and complete.

Section 55-35 gives to the wife full ownership and control of her property, including her choses in action. Her husband is now a stranger to her property and property rights, and she to his. In the ownership and control of their respective properties, their identities are now wholly separate and distinct. Thus the substantive right to sue her husband for tortious damage to her property (as distinguished from a purely personal tort as in the *Keister* case) is furnished by § 55-35.

By § 55-37 the husband's liability for the wife's torts has been completely abolished, and no action by him against her need be also against himself.

From the language of §§ 55-35, 55-36, and 55-37, it appears that as to their property rights the legislature intended wholly to sever the common law unity of husband and wife and remove all disabilities and impediments preventing one spouse from suing the other for wrongs to their respective properties. When read together, these sections empower each spouse to maintain actions at law for wrongful invasions of their respective property rights as if they had never been married.

Even at common law the concept of the single identity or entity of husband and wife was one of personalities and not of property. It is true that resultant disabilities and liabilities were brought about by this single personal identity which affected the property rights of each spouse, but the identity was purely personal. The effect upon their property rights and interests was a result of the personal unity as distinguished from an actual unity of property in-

terest, and that resulting effect upon their property rights has, we think, been abolished.

With reference to the severance by statute (Acts 1899-1900, ch. 1139, p. 1240) of the fictional unity of husband and wife insofar as their property interests were concerned, Judge Burks, in his concurring opinion in the *Keister* case, said:

"Of course, it is competent for the legislature to sever this unity so far as it may seem wise to do so, and it has severed it in respect to the wife's property, but to warrant a holding that either spouse may sue the other for slander, libel or assault, the language of the statute should be so plain that there could be no room for difference of opinion on the subject." (page 177)

In *Furey* v. *Furey, supra,* at page 733, that language was recently quoted with approval.

Even more in point and highly persuasive, if not decisive, of the question now at issue is the holding in *Edmonds* v. *Edmonds,* 139 Va. 652, 124 S. E. 415. There we decided that a married woman who had deserted her husband, no divorce having been decreed, could maintain an action of unlawful detainer against her husband to recover possession of her real estate that he occupied without her consent. In construing that part of § 5134, Code of 1919, that is now embodied in § 55-35, Code of 1950, Judge Chichester said:

"The effect of this statute is to give the wife as full control over her property during the coverture, as her husband has over his. She may sue her husband as if he were a stranger." (page 658)

In stating what he deemed to be the meaning of certain language used in the statute and especially in defining the effect of the phrase "a married woman shall have the right to acquire, hold, use, control and dispose of property as if she were unmarried," he declared:

"It follows that a husband in Virginia may be a trespasser upon his wife's lands whenever she is not occupying them, if he goes there against her will or her command; that she may prosecute him for criminal trespass; that she may dispossess him if he is in possession; or may hold him to account in connection with any transaction with reference to her lands, as if he were a stranger. His right to curtesy and his marital rights give him no more power or authority over his wife's property than if he were a total stranger." (page 658)

The *Edmonds* case was cited with approval in *Humphreys* v.

*Strong,* 141 Va. 146, 150, 126 S. E. 194, where, in stating the effect that Acts 1899-1900, ch. 1139, p. 1240, had upon a wife's property rights, it is said, "As to her property rights, during coverture, they are as strangers."

Professor William F. Prosser, in his recently published second edition of Prosser on Torts, points out that in construing and applying statutes similar to ours, the object of which is to bestow upon the wife dominion over her property free from the control of her husband, the weight of authority is that she may maintain an action against her husband for a tort against her property.

"Since the primary object of these statutes was to free the wife from the husband's control of her property, the courts have generally agreed that they enable her to maintain an action against him for any tort against her property interests. Thus she may recover from him for conversion or detention of chattels, for fraud, for trespass to land, for waste, or in an action of ejectment or unlawful detainer. Likewise, since the statutes destroy the unity of the persons and place them upon an equality, it is held that the husband may recover from the wife for similar torts as to his property.

"So far as personal torts are concerned, however, some two-thirds of the courts which have considered the question have refused, and still refuse, to construe the statutes to alter the common law rule. It is the prevailing view that neither spouse may maintain an action against the other for assault and battery, false imprisonment, malicious prosecution, defamation, or injuries resulting from negligence. And this is true even though the tort was committed and the action was begun before the marriage of the parties, or where the action is brought after the marriage has been terminated by annulment or divorce, or by the death of one spouse or even both. In some states this construction no doubt has been compelled by the language of the statute itself; but in by far the greater number it has been read into a statute which is silent on the subject of actions for personal torts.

"The courts which follow this majority view have buttressed their conclusion by inventing new arguments, not found in the early cases, for denying the remedy. * * *" Prosser: *Torts* (2d ed.) ch. 22, § 101, pp. 672 to 674.

There is no distinct line of demarcation between what tort actions

may or may not be maintained by one spouse against the other.[2]

Yet we think that the more logical line of cleavage places on one side actions for purely personal torts, such as for personal injury, defamation of character, malicious prosecutions, false imprisonment or the like, for which actions should not lie. On the other side, actions by a husband or wife for those torts that may be inflicted upon or committed against the property ( or property rights) of the other should lie. With reference to the former; *i.e.*, purely personal torts committed by one spouse against or upon the other, we adhere to and re-affirm the principles announced in the *Keister* and *Furey* cases, *supra*. But the development of legislation over the years has, we think, wholly abolished all marital unity affecting property interests and has given to and imposed upon the spouses full rights and liabilities incident to their property. A fair construction of §§ 55-35, 55-36, and 55-37 leads to the conclusion that each spouse is liable to the other for the tortious damage to his or her property.

It follows that the insurance company, as subrogee of Herbert B. Bennett, is entitled to maintain this action against his wife for her alleged destruction of his property. The motion for judgment will be reinstated and the case remanded for a new trial.

*Reversed and remanded.*

2 For an exhaustive article on this subject, see 43 Harvard Law Review 1030.