## Richmond

### JOHN LLOYD STEWART

v.

### COMMONWEALTH OF VIRGINIA

March 2, 1979.

Record No. 780749.

Present: All the Justices.

Rodney G. Goggin (Moncure & Goggin, on brief), for appellant.

Robert H. Anderson, III, Assistant Attorney General (Marshall Coleman, Attorney General, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

In this appeal, the initial question, one of first impression, is whether a husband may be convicted of grand larceny of his wife's personal property. If we answer this question in the affirmative, we must then determine whether a decree of divorce from bed and board, entered after the date of the criminal offense but prior to trial, has the effect of permitting a wife to testify against her husband, over his objection, as a witness for the Commonwealth.

John Lloyd Stewart was tried by the court below, sitting without a jury, on an indictment charging him with grand larceny, on or about February 18, 1977, of a 1969 Ford station wagon belonging to Everlee B. Stewart, who was then his wife. At trial on July 12, 1977, Stewart objected to Mrs. Stewart testifying as a witness against him. After evidence was presented showing that a divorce from bed and board had been awarded her by decree entered by the trial court on June 6, 1977, Mrs. Stewart was permitted to testify. At the conclusion of the Commonwealth's evidence, Stewart moved to strike the evidence, assigning as one ground that he could not be found guilty of grand larceny of his wife's property because of the common law fiction that husband and wife were one legal entity. The motion was overruled, and, when renewed after all the evidence had been taken, it was again denied. The trial court, finding Stewart guilty as charged, entered final judgment sentencing him to serve twelve months in jail, with all but two months suspended.

We are not concerned with the sufficiency of the evidence, which, viewed in the light most favorable to the Commonwealth, adequately supports a conviction of grand larceny. Indeed, Stewart, testifying in his own defense, admitted that the station wagon belonged to Mrs. Stewart and that he took it without permission.

At common law, marriage merged husband and wife, for the most part, into one legal entity dominated and controlled by the husband; in addition to other rights acquired by him upon marriage, the husband became the owner of all his wife's tangible personal property. *See* the concurring opinion of Judge Burks in *Keister's Adm'r v. Keister's Ex'ors,* 123 Va. 157, 176, 96 S.E. 315, 321 (1918). Consequently, as the Commonwealth concedes, at common law a husband could not commit larceny of his wife's property because he could not steal from himself. *See* Annot., 55 A.L.R. 558 (1928).

More than a century ago, the General Assembly modified the common law strictures which, upon marriage, divested a woman of the right to control her property, by approving on April 4, 1877 "An Act securing to married women, on conditions, all property acquired by them before or after marriage." Acts 1876-77, c. 329. This statute, as amended, sometimes referred to as the Married Woman's Act, is now codified as Code §§ 55-35, et seq . [1]; it was amended by Acts 1977, c. 76, to eliminate any presumption of ownership of tangible personal property based upon sex. [2] Therefore, marriage no longer gives a husband any legal interest in his wife's tangible personal property.

Courts in other jurisdictions have held that the effect of statutes similar to our own, giving married women unfettered control over their own property, is to sever the unity of person existing between spouses and thereby remove the husband's immunity from prosecution for larceny for stealing his wife's personal property. *Hunt v. State,* 72 Ark. 241, 79 S.W. 769 (1904); *State v. Herndon,* 158 Fla. 115, 27 So.2d 833 (1946); *Beasley v. State,* 138 Ind. 552, 38 N.E. 35 (1894); *State v. Koontz,* 124 Kan.

[1]Code § 55-35 provides in pertinent part:
A married woman shall have the right to acquire, hold, use, control and dispose of property *as if she were unmarried. . . .*
[2]Code § 55-47.1 provides:
No presumption of ownership of tangible personal property shall arise by operation of law to prefer one spouse of a marriage over the other if such presumption is based solely on the sex of the spouse.

216, 257 P. 944 (1927); *People* v. *Morton,* 308 N.Y. 96, 123 N.E.2d 790 (1954). To the contrary is *State* v. *Phillips,* 85 Ohio St. 317, 97 N.E. 976 (1912), where a wife was charged with larceny of her husband's goods. It was held that the common law rule that neither husband nor wife can be prosecuted for larceny of the personal property of the other would not be abrogated by the court, absent clear legislative intent to create such a crime where it did not previously exist. The court in its opinion stressed the importance of preserving the peace and sanctity of the home and family. We find the rationale of this case unpersuasive. The broad provisions of the Virginia Married Woman's Act, giving the wife absolute control over her tangible personal property, must necessarily bring her within the protective shelter of the criminal laws by making any thief who takes and deprives her of possession and use of her property subject to the usual criminal sanctions.

We have heretofore construed the provisions of the Married Woman's Act in other respects. In *Edmonds* v. *Edmonds,* 139 Va. 652, 124 S.E. 415 (1924), we held that a wife who had deserted her husband nevertheless could maintain an action of unlawful detainer to dispossess him from her real estate which he occupied contrary to her wishes. The effect of the statute, we held, was to give her full control over her property during coverture so that she could sue her husband as if he were a stranger, dispossess him from her real estate, or prosecute him for criminal trespass. *Id.* at 658, 124 S.E. at 416-17. And in *Vigilant Ins. Co.* v. *Bennett,* 197 Va. 216, 89 S.E.2d 69 (1955), we held that an insurer, subrogee of a husband under his automobile fire insurance policy, could maintain a tort action against the wife for damages resulting from her wrongful destruction of the insured automobile by burning. We stated that under § 55-35 a woman has " . . . full ownership and control of her property . . ." and that " [h]er husband is . . . a stranger to her property and property rights, and she to his." *Id.* at 223, 89 S.E.2d at 74. Thus, we construed Code §§ 55-35, *et seq.,* to give each spouse the right to sue the other in tort for damage to property. *Id.* at 226, 89 S.E.2d at 76. *See also Surratt, Adm'r* v. *Thompson,* 212 Va. 191, 183 S.E.2d 200 (1971), overruling in part *Keister's Adm'r* v. *Keister's Ex'ors, supra,* 123 Va. 157, 96 S.E. 315 (1918), by holding that a wrongful death action could be maintained against a husband for the death of his wife resulting from an automobile accident, and *Korman* v. *Carpenter,* 216 Va. 86, 216 S.E.2d 195 (1975), extending the exception of *Surratt* to permit a wrongful death action to be maintained against a husband who had

been convicted of the murder of his wife.

In our view, the purpose of the Married Woman's Act would be frustrated if a husband could steal with impunity from his wife, and we hold, therefore, that he may be prosecuted as any other thief for the larceny of her property.

The question remains whether the trial court erred in permitting Mrs. Stewart to testify as a witness in the prosecution of Stewart on the charge of grand larceny. Stewart argues that Mrs. Stewart, called to testify over his objection, was precluded from doing so by the provisions of Code § 19.2-271.2 (Code § 8-288[3] at the time of trial, recodified without change as Code § 19.2-271.2, effective October 1, 1977 by Acts 1977, c. 624). He maintains that the exception in the statute is limited to offenses by one spouse against the person of the other and does not apply to offenses against property. If so construed, the statute merely codifies the common law rule. *See* Note, 38 Va. L. Rev. 359, 361 (1952).

Stewart's argument, however, presupposes that Mrs. Stewart occupied the status of his wife at the time of trial. In *Stevens* v. *Commonwealth,* 207 Va. 371, 150 S.E.2d 229 (1966), we held that it was reversible error to have required the prosecuting witness to testify against a man charged with malicious wounding since, after the date of the alleged offense, she married the accused and was his wife when called as a witness at trial. If a marriage is void, however, one of the parties thereto has no privilege to prevent the other from testifying against him in a criminal case. *Leigh* v. *Commonwealth,* 192 Va. 583, 66 S.E.2d 586 (1951). The privilege of an accused to prevent his spouse from testifying against him is determined at the time of trial and depends upon the couple being validly married at the time. G. Lilly, *An Introduction to the Law of Evidence,* § 89 at 327 (1978); McCormick, *Evidence* § 85 at 171 (2d ed. 1972).

At the time of Stewart's trial, a decree had been entered granting Mrs. Stewart a divorce from bed and board which expressly ordered that the parties "be perpetually protected in their persons and property." During the marriage, Mrs. Stewart

---

[3]Code § 8-288 (Cum. Supp. 1976) provided in pertinent part:

In criminal cases husband and wife shall be allowed, and, subject to the rules of evidence governing other witnesses, may be compelled to testify in behalf of each other, but neither shall be compelled, nor, without the consent of the other, allowed to be called as a witness against the other, except in the case of a prosecution for an offense committed by one against the other. . . .

was competent to testify against her husband, but he had the privilege of preventing her from doing so. *See* Code § 8-287 (Cum. Supp. 1976); McCormick, *op. cit.* § 66 at 144-45. Under the provisions of Code § 20-116[4], the decree removed from Stewart this privilege of preventing Mrs. Stewart from testifying against him. Her legal capacity to testify after the divorce from bed and board was no different from what it would have been if she had obtained a divorce from the bond of matrimony. All marital rights and privileges were terminated by the *a mensa* decree, as if Mrs. Stewart had been awarded a divorce from the bond of matrimony, except that the Stewarts had the right, under Code § 20-120, to make a joint application, supported by evidence of reconciliation, to the same court that awarded the *a mensa* decree for revocation of that decree. Such revocation would, of course, reinstate the marriage with the rights and privileges thereto pertaining without requiring the parties to have another marriage ceremony performed.

There was no evidence of any such revocation in the present case. Indeed, we find no evidence of any unwillingness or reluctance on the part of Mrs. Stewart to testify. Whatever vestige of marital harmony might have remained to be protected by Stewart's exercise of his right to eliminate Mrs. Stewart as a witness against him had been thoroughly disrupted, if not totally destroyed, by the entry of the *a mensa* decree. Hence, the reason for the privilege no longer existed.

*Menefee* v. *Commonwealth,* 189 Va. 900, 55 S.E.2d 9 (1949), relied upon by Stewart, is inapposite. In that case, the wife was awarded an absolute divorce from her husband after the alleged criminal offense occurred but prior to his trial. We held that the trial court committed reversible error in permitting the wife to testify as to her husband's conduct, physical acts, and appearance shortly after the crime, which we construed to constitute confidential communications within the meaning of § 6212 of the 1919

---

[4]Code § 20-116 provides:

In granting a divorce from bed and board, the court may decree that the parties be perpetually separated and protected in their persons and property. *Such decree shall operate upon . . . the personal rights and legal capacities of the parties, as a decree for a divorce from the bond of matrimony,* except that neither party shall marry again during the life of the other. (Emphasis added.)

Code[5]. Hence, *Menefee* turned not upon the rule prohibiting testimony by one spouse against the other, but upon the separate and distinct rule of evidence governing confidential communications between husband and wife. *See also Osborne v. Commonwealth*, 214 Va. 691, 204 S.E.2d 289 (1974).

We hold that the divorce decree of June 6, 1977, terminated Stewart's privilege to prevent Mrs. Stewart from testifying against him. It is unnecessary, therefore, for us to decide whether grand larceny is an offense committed by one spouse against the other, within the exception in Code § 8-288 (Cum. Supp. 1976), permitting the victim to testify against the offender.

For the reasons assigned, we will affirm the judgment of the trial court.

*Affirmed.*

---

[5]Code § 8-289 (Cum. Supp. 1976), formerly § 6212 of the 1919 Code, provided:

Neither husband nor wife shall, without the consent of the other, be examined in any case as to any communication privately made by one to the other while married, nor shall either be permitted, without such consent, to reveal in testimony after the marriage relation ceases any such communication made while the marriage subsisted.